IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

_____
                                           )
PAULA BRAZIL,                              )
                                           )
        Plaintiff,                         )
                                           )
v.                                         )      CIVIL ACTION
                                           )      FILE NO: 4:15-CV-00204-HLM
JANSSEN RESEARCH &                         )
DEVELOPMENT LLC, et al.                    )
                                           )
        Defendants.                        )
                                           )
_____

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

This is a personal injury action concerning Invokana—a prescription medication approved by the Food and Drug Administration ("FDA") for the treatment of Type 2 diabetes. Plaintiff alleges that she developed diabetic ketoacidosis as a result of using Invokana. The Court should dismiss Plaintiff's claims against Janssen Pharmaceuticals, Inc., Janssen Research & Development LLC, Janssen Ortho LLC, and Johnson & Johnson (collectively, "Defendants").[1]

*First*, Plaintiff cannot satisfy her burden of showing that the Court has

_____

[1] Plaintiff has not served Mitsubishi Tanabe Pharma Corporation. This motion is therefore not brought on behalf of Mitsubishi.

personal jurisdiction over Johnson & Johnson.  **Second**, Plaintiff's claims are insufficiently pled and should be dismissed as against all Defendants. **Third**, Plaintiff's design defect claims are preempted by federal law to the extent they are premised on a failure to change Invokana's design.

## I.    BACKGROUND.

Invokana is a prescription medication indicated as an adjunct to diet and exercise to help lower blood sugar in adults with Type 2 diabetes.  Plaintiff alleges that after she started taking Invokana on October 21, 2013, she began losing weight and experiencing nausea and vomiting.  *See* Compl. ¶¶ 3-4.  She allegedly developed diabetic ketoacidosis on November 3, 2013.  *Id.* ¶ 5.  Though Plaintiff also alleges that Invokana can cause heart attacks, strokes, and kidney failure (*see id.* ¶ 56), she does not claim to have experienced any of these conditions.

Plaintiff filed her Complaint on October 29, 2015.  She asserts twelve causes of action against Defendants based on their alleged role in the design, manufacture, marketing, and sale of Invokana.  *See id.* ¶¶ 7-11.  Plaintiff alleges that Johnson & Johnson is incorporated in New Jersey and has its principal place of business there.[2]  *See id.* ¶ 8.  Johnson & Johnson is a holding company that does not

---

[2] Plaintiff alleges that Janssen Pharmaceuticals, Inc. is a Pennsylvania corporation with its principal place of business in New Jersey; that Janssen Research and

manufacture or sell any products.[3]  Thus, contrary to Plaintiff's allegation (*see id.*),

Johnson & Johnson plays no role in the manufacture and sale of Invokana.

Instead, Janssen is responsible for that.[4]  Plaintiff acknowledges as much.  *See id.* ¶

4 (alleging that Invokana "was first developed by [Mitsubishi] and later licensed to

Janssen Pharmaceuticals").

## II.   ARGUMENT.

### A.   The Court Should Dismiss Plaintiff's Claims Against Johnson & Johnson For Lack Of Personal Jurisdiction.

To establish personal jurisdiction, Plaintiff must demonstrate that Johnson &

Johnson's actions fall within Georgia's long-arm statute *and* that exercising

jurisdiction comports with due process.  *See Diamond Crystal Brands, Inc. v. Food*

---

Development LLC is a New Jersey corporation with its principal place of business in New Jersey; and that Janssen Ortho LLC is a Delaware corporation with its principal place of business in Puerto Rico.  *See* Compl. ¶¶ 7, 9, 10.

[3]  *See* Johnson & Johnson 2014 Form 10-K, available at http://www.sec.gov/Archives/edgar/data/200406/000020040615000004/a2014122 810-k.htm ("Johnson & Johnson is a holding company . . . .") (last visited January 5, 2016).

[4]  The FDA's on-line database shows that only Janssen holds the New Drug Application ("NDA") for Invokana.  *See* http://www.accessdata.fda.gov/ scripts/cder/drugsatfda/index.cfm?fuseaction=Search.Overview&DrugName=INV OKANA (last visited January 5, 2016).  Defendants request that the Court take judicial notice of this database.  Courts routinely take judicial notice of public documents on government websites when ruling on motions at the pleading stage. *See, e.g.*, *Wilson v. Amneal Pharms., L.L.C.*, No. 1:13-cv-00333, 2013 WL 6909930, at *4-7 (D. Idaho Dec. 31, 2013).

*Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010).  She cannot do so.

### 1.   Johnson & Johnson is not subject to personal jurisdiction under Georgia's long-arm statute.

Georgia's long-arm statute allows for the exercise of personal jurisdiction over a corporation that "transacts any business" in Georgia or commits a tort in Georgia.   *See* O.C.G.A. § 9-10-91(1)-(3).   Although Plaintiff alleges that the collective "Defendants" have done business in Georgia and committed a tort there (*see* Compl. ¶ 2), she does not include any jurisdictional allegations specific to Johnson & Johnson.  Instead, her theory is that the Court has jurisdiction because Johnson & Johnson supposedly manufactures and sells Invokana.  *See id.* ¶ 8.

Contrary to Plaintiff's allegation, Johnson & Johnson is a holding company and does *not* manufacture or sell Invokana or any other product.  *See supra* n.3.  Instead, Janssen is responsible for doing that (*see supra* n.4)—as Plaintiff essentially acknowledges.  *See* Compl. ¶ 4.  Because Plaintiff cannot establish that Johnson & Johnson transacted business in Georgia or committed a tort there, exercising jurisdiction under Georgia's long-arm statute would be improper.

In addition, Janssen's purported contacts with Georgia are not attributable to Johnson & Johnson for jurisdictional purposes.   "[A]s long as a parent and a subsidiary are separate and distinct corporate entities, the presence of one in a forum may not be attributed to another."  *Consol. Dev. Corp. v. Sherritt, Inc.*, 216

F.3d 1286, 1293 (11th Cir. 2000).  Moreover, Plaintiff has not alleged any facts

that would warrant the imputation of Janssen's Georgia contacts to Johnson &

Johnson.  *See, e.g.*, *Andrews v. Mazda Motor Corp.*, No. 1:14-cv-03432, 2015 WL

1851159, at *5  (N.D. Ga. Apr. 22, 2015)  ("[A] plaintiff must show that the

corporate form was simply a formality, and that the incorporation of the

subsidiaries 'was a sham or that it was used to defeat a public convenience, to

justify wrong, protect fraud, defend crime, or any other reason which in equity and

good conscience would justify the disregard of the corporate entities.'") (citation

omitted).

### 2.      Exercising personal jurisdiction would violate due process.

Exercising jurisdiction also would violate due process because the Court has

neither general nor specific jurisdiction over Johnson & Johnson.

### a.      Plaintiff cannot establish general jurisdiction.

In *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), the Supreme Court held

that general personal jurisdiction exists only where the defendant's "affiliations

with the [forum] State are so 'continuous and systematic' as to render [it]

essentially at home" there.  *Id.* at 754 (quoting *Goodyear Dunlop Tires Operations,*

*S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)).  A corporation is deemed at "home"

in the state where it is incorporated and has its principal place of business.  *Id.* at

760.  While general jurisdiction is not limited solely to these "paradigm" locations, a corporation will *not* be subject to general jurisdiction in a state merely because it "engages in a substantial, continuous, and systematic course of business" there.  *Id.* at 760-61.  As the Court explained, such a proposition is "unacceptably grasping."  *Id.* at 761.  Instead, a corporation may be subject to general jurisdiction outside the state where it is incorporated and has its principal place of business only in an "exceptional case."[5]  *Id.* at 761 n.19.

Plaintiff concedes that Johnson & Johnson is incorporated in New Jersey and has its principal place of business there.  *See* Compl. ¶ 8.  Accordingly, Johnson & Johnson is not subject to general jurisdiction in Georgia.  *See, e.g.*, *Schulman v.*

---

[5]  The Supreme Court explained that its decision in *Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), is the "textbook" example of an exceptional case.  *Daimler*, 134 S. Ct. at 761 n.19.  In *Perkins*, the defendant was a Philippines-based corporation that had to temporarily relocate to Ohio due the Japanese occupation of the Philippines during World War II.  *See* 342 U.S. at 447 48.  The Court held that an Ohio court could exercise jurisdiction over the defendant because "[g]iven the wartime circumstances," Ohio "was the corporation's principal, if temporary, place of business."  *Daimler*, 134 S. Ct. at 756 & n.8.  Thus, *Perkins* is not a case in which the Court recognized "an additional basis for general jurisdiction outside the two [*Daimler*] paradigms."  *E.g.*, *Kraft v. Johnson & Johnson*, 97 F. Supp. 3d 846, 853 (S.D. W. Va. 2015).  Rather, it is "a case in which the defendant's supervisory operations in the forum effectively rendered the forum the defendant's principal place of business."  *Id.*; *see also Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1204-05 (11th Cir. 2015) (discussing *Perkins* and finding no general jurisdiction over out-of-state defendant that did not establish its principal place of business in Florida).

*Instit. for Shipboard Educ.*, No. 15-11689, 2015 WL 4896597, at *2 (11th Cir. Aug. 18, 2015) (no general jurisdiction where defendant was neither incorporated in forum nor had its principal place of business there); *Carmouche*, 789 F.3d at 1205 (same); *Wish Atlanta, LLC v. Contextlogic, Inc.*, No. 4:14-CV-00051, 2014 WL 5091795, at *4 (M.D. Ga. Oct. 9, 2014) (same).  Moreover, this is not an "exceptional case" within the meaning of *Daimler*.  None of the allegations in Plaintiff's Complaint supports a finding that Johnson & Johnson is otherwise "at home" in Georgia.

In addition, Plaintiff has not alleged any facts that would warrant the imputation of Janssen's Georgia contacts to Johnson & Johnson.[6]  *See supra* at Part II.A.1.  And even if the Court did impute Janssen's contacts to Johnson & Johnson, the Court *still* would not have general jurisdiction.  *See, e.g.*, *Daimler*, 134 S.Ct. at 763 (parent corporation not subject to general jurisdiction even assuming that foreign subsidiary was "at home" in California and that its forum contacts, which included in-state facilities and "billions of dollars" in revenue from

---

[6] In Daimler, the Supreme Court signaled that for purposes of general jurisdiction, a subsidiary's forum contacts may not be imputable to the subsidiary's parent corporation on an agency theory.  *See* 134 S. Ct. at 759 & n.13.

selling thousands of cars, were attributable to parent) (Sotomayor, J., concurring).[7]

## b.    Plaintiff cannot establish specific jurisdiction.

To establish specific jurisdiction, a plaintiff must demonstrate that (1) the defendant purposefully directed its activities at residents of the forum and (2) the litigation results from alleged injuries that arise out of or relate to those activities. *See, e.g.*, *Wish Atlanta*, 2014 WL 5091795, at *4-5; *see also Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014) ("defendant's suit-related conduct must create a substantial connection with the forum State").

As a holding company that does not manufacture or sell any product, Johnson & Johnson did not purposefully direct any activities at Georgia residents. Plaintiff's claims thus do not arise out of any such activities.  As the court reasoned in *Androphy v. Smith & Nephew, Inc.*, 31 F. Supp. 2d 620 (N.D. Ill. 1998):

> [Johnson & Johnson ("Johnson")] is not subject to personal jurisdiction under the Due Process clause of the Fourteenth Amendment.  . . . It is a holding company which neither

---

[7] To the extent Plaintiff alleges that Janssen marketed and sold Invokana in Georgia (*see* Compl. ¶¶ 7, 9-10), such allegations are insufficient to establish general jurisdiction over an out-of-state pharmaceutical manufacturer like Janssen. *See, e.g.*, *Clarke v. Pfizer Inc.*, No. 4:15CV01072, 2015 WL 5243876, at *2 (E.D. Mo. Sept. 8, 2015); *Evans v. Johnson & Johnson, et al.*, No. 2:14-cv-29700, 2015 WL 1650402, at *6 (S.D. W. Va. Apr. 14, 2015).  Because Janssen's Georgia contacts are insufficient to establish general jurisdiction over Janssen in Georgia, those same contacts necessarily are insufficient to establish general jurisdiction over Johnson & Johnson, even assuming they could be imputed to it.

> transacts business nor contracts to provide products or services in Illinois. Thus, Johnson lacks the "minimum contacts" with the forum state that would justify exercise of personal jurisdiction. . . . It has not "purposefully avail[ed] itself of the privilege of conducting activities" in Illinois . . . .

*Id.* at 622; *see also Young v. Daimler AG*, 175 Cal. Rptr. 3d 811, 817 n.5 (Ct. App. 2014) (plaintiff's claims could not arise out of defendant's contacts with forum because defendant was not involved in design, manufacture, distribution, or sale of subject automobile). Moreover, Plaintiff has not alleged any facts to support the imputation of Janssen's contacts to Johnson & Johnson. *See supra* at Part II.A.1.

**B.    The Court Should Dismiss Plaintiff's Claims Against All Defendants Because They Are Insufficiently Pled.**

Dismissal of claims is appropriate under Rule 12(b)(6) when a plaintiff fails to allege facts sufficient "to raise a right to relief above the speculative level" or fails to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56, 570 (2007). This standard applies to any claim brought in federal court. *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009).

A claim is plausible only if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Where a complaint pleads facts that are "merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted).

Further, although a court generally must accept well-pleaded facts as true on a motion to dismiss, this principle does *not* apply to legal conclusions. *See id*. ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *see also Twombly*, 550 U.S. at 555 ("[P]laintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citing FED. R. CIV. P. 8(a)).

### 1.      Plaintiff's strict liability claim (Count I) fails.

To establish strict liability, a plaintiff must show that "the property when sold by the manufacturer was not merchantable and reasonably suited to the use intended, and its condition when sold is the proximate cause of the injury sustained."  O.C.G.A. § 51-1-11(b)(1); *see also Goodson v. Boston Scientific,* No. 1:11-CV-3023, 2011 WL 6840593, at *4 (N.D. Ga. Dec. 29, 2011) (noting "existence of a defect is crucial").  While Plaintiff alleges that Invokana was defective in its manufacture, design, and warnings, she fails to plead sufficient *facts* supporting a claim under these theories.

### a.      Plaintiff has not pled a plausible manufacturing defect claim.

To prevail on a manufacturing defect claim, a plaintiff must show that the product deviated from the manufacturer's specifications and the defect proximately

caused her injury.  *See Jones v. Amazing Prods., Inc.*, 231 F. Supp. 2d 1228, 1236

(N.D. Ga. 2002).  Plaintiff alleges that Invokana was defectively manufactured (*see*

Compl. ¶¶ 39, 45), but she does not allege *how* the drug deviated from its intended

design or *how* any defect caused her injuries.  Thus, her claim is not plausible.  *See*

*Henderson v. Sun Pharms. Indus., Ltd*., No. 4:11-CV-0060, 2011 WL 4024656, at

*5 (N.D. Ga. June 9, 2011) (Murphy, J.) (dismissing claim where plaintiff did not

allege specific manufacturing defect proximately caused injury); *Moore v. Mylan*

*Inc.*, 840 F. Supp. 2d 1337, 1344-45 (N.D. Ga. 2011) (similar).

### b.    Plaintiff has not pled a plausible design defect claim.

A design defect claim is deficient "if it fails to allege a specific design . . .

defect."  *Coney v. Mylan Pharms., Inc.*, No. 6:11-cv-35, 2012 WL 170143, at *6

(S.D. Ga. Jan 19, 2012).  Plaintiff alleges that Invokana is "defective" in its design

because it is capable of causing "serious injuries."  Compl. ¶¶ 38-39, 45, 51.  But

she fails to allege any *facts* identifying the specific defect at issue or how it

supposedly caused her injuries.  In addition, while Plaintiff alleges that there were

"safer available alternatives" for the treatment of Type 2 diabetes (*id.* ¶ 23), she

does not identify these alternatives, nor does she explain how they would have

prevented her injuries.  Thus, Plaintiff's claim is not plausible.  *See Henderson*,

2011 WL 4024656, at *5 (dismissing claim because while plaintiff alleged that

drug risks exceeded benefits, he failed to allege "any specific design . . . defect that proximately caused" injuries); *Coney*, 2012 WL 170143, at *6 (similar); *Moore*, 840 F. Supp. 2d at 1344-45 (similar); *Goodson,* 2011 WL 6840593, at *4 (similar).

### c. Plaintiff has not pled a plausible failure-to-warn claim.

To succeed on a failure-to-warn claim, a plaintiff must prove that (1) the manufacturer failed to provide her prescribing physician with adequate warnings about risks of which it knew or should have known, and (2) the inadequate warning proximately caused her injuries.  *See, e.g.*, *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010); *McCombs v. Synthes (U.S.A.)*, 587 S.E.2d 594, 595 (Ga. 2003).  Plaintiff fails to state a plausible claim for several reasons.

First, Plaintiff alleges that Defendants failed to warn her and other consumers about Invokana's alleged risks.  *See* Compl. ¶¶ 24, 44.  But under the learned intermediary doctrine, "the manufacturer of 'a prescription drug . . . does not have a duty to warn the patient of the dangers involved with the product.'" *Dietz*, 598 F.3d at 815 (quoting *McCombs*, 587 S.E.2d at 595).

Second, while Plaintiff alleges that Defendants failed to provide an adequate warning to her physician (*see* Compl. ¶ 59), she does not allege any *facts* to support a reasonable inference that the warning provided was inadequate. Plaintiff's claim is premised on Defendants' failure to warn about a risk of diabetic

ketoacidosis, which Plaintiff allegedly experienced on November 3, 2013. *See id.* ¶¶ 3-5. But Plaintiff does not sufficiently allege that Defendants knew or should have known *at that time* about a risk of diabetic ketoacidosis. In fact, she acknowledges that it was not until May 15, 2015—*i.e.*, 19 months *after* she allegedly was injured—that the FDA advised that diabetic ketoacidosis *may* be a complication of Invokana and other SGLT2 inhibitors.[8] *See id.* ¶ 17. Thus, Plaintiff has not sufficiently alleged that Defendants knew or should have known about that risk before her alleged injury.

Third, Plaintiff does not allege that her physician was unaware of a potential risk of diabetic ketoacidosis when he made his prescribing decision or that he would have made a different decision had Defendants warned about that risk. Thus, the Court cannot reasonably infer that a deficiency in Invokana's warnings proximately caused Plaintiff's alleged injury. *See Jones v. Sofamor S.N.C.*, Nos. 1:96-CV-3167, 1:96-CV-3170, 1999 WL 1062103, at *7 (N.D. Ga. Apr. 29, 1999) ("Where a learned intermediary has actual knowledge of the substance of the alleged warning and would have taken the same course of action even with the

---

[8] The FDA's warning was based on 20 adverse events reported in patients treated with various SGLT2 inhibitors between March 2013 and June 2014. *See* Compl. ¶ 18. Plaintiff does not allege how many of these reports (if any) involved patients treated with Invokana before she allegedly was injured.

information the plaintiff contends should have been provided, . . . the causal link is broken and the plaintiff cannot recover.").[9]

### 2.    Plaintiff's claims for design defect (Count II), failure to warn (Count III), and negligence (Count IV) fail.

Plaintiff's second and third causes of action for design defect and failure to warn fail for the same reasons as the design defect and failure-to-warn components of her strict liability claim.  Like her strict liability claim, Plaintiff's fourth cause of action for negligence is premised on an alleged failure to properly manufacture, design, and label Invokana.  *See* Compl. ¶¶ 65-66.  Her negligence claim therefore fails for the same reasons as her strict liability claim.

### 3.    Plaintiff's express warranty claim (Count V) fails.

An express warranty is created by an "affirmation of fact or promise" that relates to the product and becomes part of the "basis of the bargain."  O.C.G.A. § 11-2-313.  Although Plaintiff alleges that Invokana "failed to conform to those representations made by Defendants in package inserts, and otherwise" (Compl. ¶

---

[9] Plaintiff's claim also fails to the extent it is premised on a failure to warn about risks she did not experience, including heart attack, stroke, and kidney injury.  *See Mason v. Smithkline Beecham Corp.*, No. 05-1252, 2010 WL 2697173, at *5 n.3 (C.D. Ill. July 7, 2010) ("[A] warning is only inadequate if it fails to list risks or side effects that do occur."); *In re Fosamax Prods. Liab. Litig.*, No. 1:06–MD–1789, 2010 WL 1257299, at *5 (S.D.N.Y. Mar. 26, 2010) ("Plaintiff cannot establish proximate cause without evidence that [defendant] fail[ed] to warn of the specific risk that . . . materialized . . . .").

71), she does not allege the content of the representations at issue.  Thus, her claim is not plausible.  *See, e.g.*, *Goodson*, 2011 WL 6840593, at *5 (dismissing claim where plaintiff did not describe content of a specific statement made by defendant).

In addition, with a limited exception not applicable here, "warranty claims may only be brought by those in privity with the Defendant." *Id.* at *5 (citing O.C.G.A. § 11-2-318).  Because Plaintiff does not allege that she purchased Invokana directly from Defendants, the Court should dismiss her claim.  *See id.*

### 4.     Plaintiff's implied warranty claim (Count VI) fails.

Plaintiff alleges that Invokana was not reasonably "fit" for its intended use. Compl. ¶¶ 75-77.  But that allegation "is merely a legal conclusion." *Goodson*, 2011 WL 6840593, at *5.  She also alleges that Invokana was not designed "in accordance with good design, engineering and industry standards." Compl. ¶¶ 75-77.  But she fails to identify the "standards" that Defendants supposedly breached. Thus, she has not disclosed the grounds of her entitlement to relief. *See Twombly*, 550 U.S. at 555.  Her claim also fails for lack of privity. *See Henderson*, 2011 WL 4024656, at *7; *Goodson*, 2011 WL 6840593, at *5; *Bryant v. Hoffmann-La Roche, Inc.*, 585 S.E.2d 723, 731 (Ga. Ct. App. 2003).

### 5.     Plaintiff's fraud-based claims (Counts VII-IX) fail.

Plaintiff's fraud-based claims are subject to dismissal because Plaintiff does

not "state with particularity the circumstances constituting fraud." FED. R. CIV. P. 9(b).  To satisfy Rule 9(b), a plaintiff must plead the "who, what, when, where, and how of the allegedly false statements." *Henderson*, 2011 WL 4024656, at *6.

Plaintiff does not provide sufficient detail concerning the content and circumstances of any alleged misrepresentation, nor does she specify which Defendant made which misrepresentation.  Instead, she alleges that the collective "Defendants" omitted material facts concerning the "safety" of Invokana in unspecified "advertisements and other materials" (Compl. ¶ 83); misrepresented that Invokana was found to be "safe and/or effective" (*id.* 89); and fraudulently concealed that Invokana "was not as safe as other drugs" (*id.* ¶ 100).

Threadbare allegations such as these do *not* satisfy Rule 9(b).  *See Henderson*, 2011 WL 4024656, at *6 (dismissing claim where plaintiff failed to identify "the specific Defendant that allegedly made the fraudulent statements"; to provide "any examples of specific fraudulent statements"; and to state "the time, place, or context of any allegedly fraudulent statement"); *Goodson*, 2011 WL 6840593, at *5-6 (similar); *Moore*, 840 F. Supp. 2d at 1349-51 (similar).

## 6. Plaintiff's negligent misrepresentation claim (Count X) fails.

Plaintiff's claim is premised on the same insufficient allegations that underpin her failure-to-warn claim.  *See* Compl. ¶¶ 107-09.  Because Plaintiff's

failure-to-warn claim is not plausible, the Court should dismiss her negligent misrepresentation claim. *See Brown v. Roche Labs., Inc.*, 567 Fed. App'x 860, 863 (11th Cir. 2014) (affirming dismissal of negligent misrepresentation claim because it was "merely a reframing" of failure-to-warn claim); *Swicegood v. Pliva, Inc.*, 543 F. Supp. 2d 1351, 1357 (N.D. Ga. 2008) ("[M]isrepresentation claims against a manufacturer properly collapse into the failure to warn claims.").

### 7.    Plaintiff's consumer protection claim (Count XI) fails.

Plaintiff alleges that the sale of Invokana constitutes an unfair and/or deceptive trade practice because "Defendants advertised and promised that Invokana[] was of a particular standard, quality, or grade when in fact it was not." Compl. ¶ 117.  This boilerplate allegation and others like it are insufficient because they fail to identify the deceptive advertisements and promises at issue. *See Barge v. Bristol-Myers Squibb Co.*, No. 3:07-cv-00783, 2009 WL 5206127, at *11 (D.N.J. Dec. 30, 2009) (dismissing claim because plaintiff did not identify allegedly deceptive materials or allege that any deceptive act influenced his physician's prescribing decision).

### 8.    Plaintiff's punitive damages claim (Count XII) fails.

Because Plaintiff fails to plead a plausible claim, her derivative claim for punitive damages also fails. *See D.G. Jenkins Homes, Inc. v. Wood,* 582 S.E.2d

478, 482 (Ga. Ct. App. 2003).  In addition, her claim is insufficiently pled because she does not allege "*facts* that, if true, would demonstrate the referenced elements required for the award of punitive damages under Ga. Code Ann. § 51–12–5.1(b)." *Taylor v. Miller Coors*, *LLC,* No. 1:14-CV-94, 2014 WL 4179918, at *1 (M.D. Ga. Aug. 20, 2014).   Plaintiff alleges that Defendants intentionally and willfully "misrepresented and downplayed the risks of serious injuries" associated with Invokana.  Compl. ¶¶ 126-27.  But she does not provide any *factual* support for those conclusory allegations.  Thus, her claim is not plausible.  *See Henderson*, 2011 WL 4024656, at *8; *Moore*, 840 F. Supp. 2d at 1353.

### C.   Plaintiff's Design Defect Claims Are Preempted By Federal Law In Addition To Being Insufficiently Pled.

While Plaintiff does not explain how Invokana is defectively designed, one thing is certain:  her design defect claims (Counts I, II, & IV) are premised on the proposition that Defendants should have designed Invokana *differently*.  *See* Compl. ¶¶ 23, 25, 38, 45, 50-52.  Because federal law precludes a manufacturer from redesigning a prescription drug without FDA approval, Plaintiff's claims fail under principles of implied conflict preemption.   And because no amount of re-pleading can save her claims, the Court should dismiss them now *with prejudice*.

### a.   A recent trilogy of Supreme Court cases has clarified the test for conflict preemption.

The laws of the United States are "the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl. 2. "Conflict preemption" precludes the application of state law when it is "impossible for a private party to comply with both state and federal requirements . . . or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 899 (2000). Recently, three Supreme Court decisions—*Wyeth*, *Mensing*, and *Bartlett*—have clarified the test by which courts are to determine when impossibility exists as a matter of law.

First, in *Wyeth v. Levine*, 555 U.S. 555 (2009), the Court explained when impossibility does *not* exist—*i.e.*, where there is a regulatory provision that expressly allows a manufacturer to do *unilaterally* what state-law requires.[10] *See id.* at 572-73.

Next, in *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011), the Court clarified

---

[10] The Supreme Court held that failure-to-warn claims against Wyeth seeking redress for injuries allegedly suffered by a private party were *not* preempted because FDA regulations allowed Wyeth to change its warnings unilaterally without violating federal law. The Court nevertheless acknowledged that Wyeth could have established impossibility preemption if, notwithstanding its ability to act unilaterally, it could prove by "clear evidence" that the FDA would have subsequently rejected the change. 555 U.S. at 570-71. Because Wyeth offered no such evidence, the Court could not find impossibility on the record before it. *See id.* at 572.

how courts should define "impossibility" as it relates to the Court's conflict preemption jurisprudence:  "[t]he question for 'impossibility' is whether the private party could *independently* do under federal law what state law requires of it."  *Id.* at 2579 (emphasis added).  And "independently," the Court explained, means *unilaterally*:  "to decide these cases, it is enough to hold that when a party cannot satisfy its state duties without the Federal Government's special permission and assistance, which is dependent on the exercise of judgment by a federal agency, the party cannot independently satisfy those state duties for pre-emption purposes."  *Id.* at 2580-81.

Finally, in *Mutual Pharmaceutical Co. v. Bartlett*, 133 S. Ct. 2466 (2013), the Court signaled that the *Mensing* conflict preemption test applies beyond *Mensing*'s facts—*i.e.*, a failure-to-warn claim against a generic drug manufacturer—by applying the test to hold that it would be impossible for a drug manufacturer to make major changes to the design of any drug—"whether generic or brand-name"—without the FDA's special assistance or permission.  *Id.* at 2471. As the Court confirmed, any such change would render the drug a "new drug" that must receive prior FDA approval before it can be marketed to the public.  *Id.* at 2475.  In finding the plaintiff's design defect claim preempted, the Court held that state-law design-defect claims that "place a duty on manufacturers to render a drug

safe . . . by altering its composition . . . are in conflict with federal laws that prohibit manufacturers from unilaterally altering drug composition." *Id.* at 2479.[11] *Bartlett* thus confirms the core holding of *Mensing*—to wit, that when a party cannot satisfy its alleged state duties *before* obtaining the FDA's approval, those state duties are preempted by federal law.

This trio of Supreme Court decisions leaves lower courts with a simple framework for determining when a state-law claim is conflict-preempted. First, the court should identify what action the state law claim would require the defendant to take. Second, the court should determine whether there is a federal law or regulation that prevents the defendant from taking that action *independently*—*i.e.*, without a federal agency's "special permission and assistance." If federal law prevents the defendant from taking that action unilaterally, the claim is preempted. *See Mensing,* 131 S. Ct. at 2580-81. But if federal law allows the defendant unilaterally to take the action allegedly required by state law, the claim is not preempted—unless the defendant can show by "clear evidence" that the agency would have subsequently disallowed the action. *See Wyeth,* 555 U.S. at 571-72.

---

[11] The plaintiff in *Bartlett* alleged she developed toxic epidermal necrolysis after taking sulindac, and she claimed that the drug's design was "unreasonably dangerous." 133 S. Ct. at 2472, 2476. The Supreme Court rejected the plaintiff's claim because it would have required the manufacturer of sulindac to alter the drug's composition without FDA approval. *See id.* at 2475.

The Sixth Circuit recently applied the Supreme Court's holdings to find that design defect claims involving the branded prescription drug Ortho Evra were preempted. *See Yates v. Ortho-McNeil-Janssen Pharms., Inc.*, 808 F.3d 281 (6th Cir. 2015). Multiple other courts—including a court applying Georgia law—have reached similar conclusions in cases involving branded prescription drugs. *See, e.g.*, *Rheinfrank v. Abbott Labs, Inc.*, No. 1:13-cv-144, 2015 WL 5836973, at *5 (S.D. Ohio Oct. 2, 2015) (holding that design defect claim concerning Depakote was preempted because "[c]reating an alternative design would require changing the composition of an FDA-approved drug, which is prohibited by federal law[,]" and explaining that "the Supreme Court did not limit its holding in *Bartlett* to generic drugs"); *Shah v. Forest Labs Inc.*, No. 10 C 8163, 2015 WL 3396813, at *5 (N.D. Ill. May 26, 2015) (claim that "Lexapro is inherently dangerous based on its design . . . would be preempted by federal law"); *Booker v. Johnson & Johnson*, 54 F. Supp. 3d 868, 875 (N.D. Ohio  2014) (applying Georgia law) ("Plaintiff's design defect claim fails as a matter of law" because "it was impossible for the Defendants to comply with both its [sic] state-law duty to alter the composition of the drug, and its federal-law duty not to alter an FDA-approved design.").[12]

---

[12] A few courts have declined to extend *Mensing* and *Bartlett* to branded drugs. *See Sullivan v. Aventis, Inc.*, No. 14-cv-2939, 2015 WL 4879112 (S.D.N.Y. Aug. 13,

Moreover, because this preemption challenge presents a purely legal issue, the Court can and should decide it at the dismissal stage—as other courts have done when faced with similar arguments. *See, e.g.*, *Mensing*, 131 S.Ct. at 2567; *Amos v. Biogen Idec Inc.*, 28 F. Supp. 3d 164, 169 (W.D.N.Y. 2014); *Thompson v. Allergan USA, Inc.*, 993 F. Supp. 2d 1007, 1013 (E.D. Mo. 2014).

> **b.    Plaintiff's design defect claims require a change to Invokana's design that federal law forbids.**

Under Georgia law, "the risks inherent in a product design" must be balanced against "the utility of the product so designed." *Bryant*, 585 S.E.2d at 732-33.  Here, Plaintiff alleges that Invokana is defective "as formulated" because it is "unreasonably dangerous" and "as designed it is capable of causing serious

---

2015); *Brown v. Johnson & Johnson*, 64 F. Supp. 3d 717 (E.D. Pa. 2014); *Estate of Cassel v. Alza Corp.*, No. 12-cv-771, 2014 WL 856023 (W.D. Wis. Mar. 5, 2014). These cases, however, are poorly reasoned because they "ignore[] the plain and explicit language of *Bartlett* [,]" in which the Supreme Court recognized that "'[o]nce a drug—whether generic *or brand-name*—is approved, the manufacturer is prohibited from making any major changes' without seeking approval from the FDA." *Yates v. Ortho-McNeil Pharm., Inc.*, 76 F. Supp. 3d 680, 687 (N.D. Ohio 2015) (rejecting *Cassel* and quoting *Bartlett*), *aff'd Yates*, 808 F.3d 281.  Moreover, the Supreme Court and other courts have recognized that *Mensing* states a general principle of conflict preemption that is *not* limited to a particular pharmaceutical context.  *See, e.g.*, *Wos. v. E.M.A. ex rel. Johnson*, 133 S. Ct. 1391, 1398 (2013) (applying *Mensing* preemption to state law purporting to impose lien on Medicaid beneficiaries' tort recoveries); *Horseman's Benevolent & Protective Ass'n Ohio Div., Inc. v. DeWine*, 666 F.3d 997, 1000-01 (6th Cir. 2012) (holding state law conflicted with federal statute requiring consent of a horseman's group to off-track wagering).

personal injuries." Compl. ¶¶ 25, 50-51. Plaintiff also alleges that Invokana was "more dangerous than other drugs which are designed to treat type 2 diabetes" (*id.* ¶ 52) and that safer "alternatives" are available (*id.* ¶ 23). Thus, Plaintiff clearly contends that Defendants should have designed Invokana differently.

While Plaintiff seeks to enforce a purported state law duty to change the design of Invokana, federal law *prohibits* a drug manufacturer from changing a drug's formulation without prior FDA approval. As the Supreme Court confirmed in *Bartlett*, once the FDA approves a drug, "the manufacturer is prohibited from making any major changes to the 'qualitative or quantitative formulation of the drug product, including active ingredients, or in the specifications provided in the approved application.'" 133 S. Ct. at 2471 (quoting 21 C.F.R. § 314.70(b)(2)(i)). The "major changes" regulation addressed by the Court in *Bartlett* specifies that even changes to a medicine's *inactive* ingredients constitute a major change that requires FDA approval. *See* 21 C.F.R. § 314.70(b)(2)(i); *see also Yates*, 808 F.3d at 298.

The *Bartlett* Court confirmed that "[i]n the drug context, either increasing the 'usefulness' of a product or reducing its 'risk of danger' would require redesigning the drug: A drug's usefulness and its risk of danger are both direct results of its chemical design and, most saliently, its active ingredients." 133 S. Ct.

at 2475.  Because Plaintiff alleges that Invokana is defective as "formulated" and "designed," she necessarily contends that state law required unilateral action that federal law forbids.  Indeed, had Janssen changed the design of Invokana as Plaintiff advocates, "the altered chemical would be a new drug that would require its own NDA to be marketed in interstate commerce."  *Id.* (quoting 21 C.F.R. § 310.3(h) (giving examples of when FDA considers a drug to be new, including cases involving "newness for drug use of any substance which composes such drug, in whole or in part")).

Because Janssen could not have redesigned Invokana without receiving FDA approval, the Court should dismiss Plaintiff's design defect claims with prejudice to the extent they are premised on a failure to change Invokana's design.[13]

## III.  **CONCLUSION**

For the foregoing reasons, the Court should grant Defendants' Motion.

---

[13] Because Johnson & Johnson does not hold the NDA for Invokana (*see supra* n.5), it had no authority even to request the FDA's permission to change Invokana's design.  *See* 21 C.F.R. § 314.3(b) (defining NDA holder as "applicant"); *id.* § 314.71(a) (confirming that "[o]nly the applicant" can submit supplement to approved drug application).  Plaintiff's claims against Johnson & Johnson are preempted for this additional reason.  *See, e.g.*, *In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 940 (6th Cir. 2014) (failure-to-warn claims against Eli Lilly & Co. involving use of drug after Lilly sold its NDA were preempted, reasoning that "[a]fter the divestiture [of the NDA], Lilly had no more power to change the label than did" generic manufacturers).

DATED:  January 7, 2016                    GREENBERG TRAURIG, LLP


                                By:  */s/ Christiana C. Jacxsens* _____
                                     Christiana C. Jacxsens
                                     Georgia Bar No. 233912
                                     Terminus 200
                                     3333 Piedmont Road, N.E.
                                     Suite 2500
                                     Atlanta, GA 30305
                                     Telephone:  (678) 553-2105
                                     Facsimile:  (678) 553-2106
                                     jacxsensc@gtlaw.com
                                     *Attorneys for Defendants Johnson &*
                                     *Johnson, Janssen Pharmaceuticals, Inc.,*
                                     *Janssen Research & Development, LLC, and*
                                     *Janssen Ortho LLC*

I certify that the brief has been prepared with Times New Roman 14 point font in accordance with Rules 5.1C and 7.1B of the Local Rules of the Northern District of Georgia.

                                By:  */s/ Christiana C. Jacxsens*
                                     Christiana C. Jacxsens
                                     Georgia Bar No. 233912

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

_____
                                                    )
PAULA BRAZIL,                                       )
                                                    )
        Plaintiff,                                  )
                                                    )
v.                                                  )        CIVIL ACTION
                                                    )        FILE NO: 4:15-CV-00204-HLM
JANSSEN RESEARCH &                                  )
DEVELOPMENT LLC, et al.                             )
                                                    )
        Defendants.                                 )
_____

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 7, 2016, I electronically filed the **Defendants Johnson & Johnson, Janssen Pharmaceuticals, Inc., Janssen Research & Development LLC, and Janssen Ortho LLC's Memorandum of Law in Support of Motion to Dismiss** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following counsel of record:

Mark E. Silvey
Adam A. Edwards
Greg Coleman Law PC
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929

adam@gregcolemanlaw.com
mark@gregcolemanlaw.com
*Counsel for Plaintiff*

This 7th day of January, 2016.

s/ Christiana C. Jacxsens
Christiana C. Jacxsens
Georgia Bar No. 233912

*Attorneys for Defendants Johnson &
Johnson, Janssen Pharmaceuticals, Inc.,
Janssen Research & Development, LLC, and
Janssen Ortho LLC*

**GREENBERG TRAURIG LLP**
Terminus 200
3333 Piedmont Rd., NE, Suite 2500
Atlanta, Georgia 30305
Telephone:  (678) 553-2105
Facsimile:  (678) 553-2106
jacxsensc@gtlaw.com