## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ROME DIVISION

PAULA BRAZIL,

     Plaintiff,

vs.

JANSSEN RESEARCH &
DEVELOPMENT LLC, et al.

     Defendants.

CASE NO. 4:15-CV-00204-HLM

JURY DEMANDED

## PLAINTIFF'S RESPONSE TO DEFENDANTS JANSSEN PHARMACEUTICALS, INC., JANSSEN RESEARCH & DEVELOPMENT LLC, JANSSEN ORTHO LLC, AND JOHNSON & JOHNSON'S MOTION TO DISMISS

Plaintiff, Paula Brazil, hereby files her response in opposition to Defendants' Motion to Dismiss as follows:

## ARGUMENT

### I.    Plaintiff Has Sufficiently Pled Specific Personal Jurisdiction

Contrary to Defendants' argument, this Court can properly exercise personal jurisdiction. Defendants seek dismissal for lack of *in personam* jurisdiction. Because Defendants manufactured, packaged, and placed into the stream of commerce defective medication which injured Plaintiff in the State of Georgia, and because they engaged in a persistent course of conduct and derived substantial revenue from goods used and consumed in this State, Georgia's Long Arm Statute

reaches the non-resident foreign corporations and does not offend the requirements

of Due Process. O.C.G.A. § 9-10-91(3).

A.      **Georgia's Long-Arm Statute**

Georgia's Long Arm Statute provides in pertinent part that a court of this

State may exercise personal jurisdiction over a non-resident as to any cause of

action arising from any of the acts, omissions, ownership, use, or possession

enumerated in O.C.G.A. § 9-10-91 in the same manner as if he were a resident of

the State, if in person or through an agent he:

> (1)    Transacts any business within the State;
>
> (2)    Commits a tortuous act or omission within the State . . . ; or
>
> (3)    Commits a tortuous injury in the State caused by an act or omission outside the State *if the tortfeasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this State*…

O.C.G.A. § 9-10-91 (emphasis added). In addition,

> [a]s the Eleventh Circuit has observed, the statute must be "read literally," and "imposes independent obligations that a plaintiff must establish for the exercise of personal jurisdiction that are distinct from the demands of due process." *See Diamond Crystal*, 593 F.3d at 1259. Furthermore, a district court must "interpret and apply Georgia's long-arm statute in the same way as would the Georgia Supreme Court." *See id*. at 1258.

*Betancourt v. Endo Pharms., Inc*., No. 1:11-cv-3805, 2014 U.S. Dist. LEXIS

184962, at *9 (N.D. Ga. Dec. 17, 2014). Defendants fail to demonstrate this Court's

2

lack of jurisdiction. Under subsection (3) of the Long Arm Statute, personal jurisdiction over Defendants exists because they engaged in a persistent course of conduct by manufacturing and packaging medication sold in Georgia and derived substantial revenue from the sale of their products in the State of Georgia. Further, their conduct establishes the minimum contacts necessary to meet the requirements of due process in the United States Constitution.

If Defendants conducted business in the State of Georgia, personal jurisdiction would exist under subsection (1) or subsection (2) of O.C.G.A. § 9-10-91, and there would be no need for the Legislature to have enacted subsection (3). The test is whether Defendant, personally or through their agents, "engage[] in [a] persistent course of conduct, or derives substantial revenue from goods used or consumed . . . in this State[.]" O.C.G.A. § 9-10-91(c).

In *Showa Denko KK v. Pangle*, 202 Ga. App. 245, 247 (1991), the Court of Appeals held that specific jurisdiction existed over a Japanese manufacturer of raw material which was incorporated into a dietary supplemental sold and distributed in the United States, including Georgia. Showa Denko's American subsidiary, S.D.A., sold L-Tryptophan in bulk to customers in other states for use in the manufacture of dietary supplements grossing approximately $4,000,000.00. Even though the manufacturers of the dietary supplements were not located in Georgia, their customers operated retail stores throughout Georgia. Under this scenario, the trial

court could properly exercise jurisdiction over Showa Denko under O.C.G.A. § 9-10-91(3). *Id*.

Similarly, in *Continental Research Corporation v. Reeves*, 204 Ga. App. 120, 124 (1992), the defendant was in the business of manufacturing chemical solvents which it sold to air conditioning wholesalers through its independent manufacturer's representatives. It had no registered agent for service of process, no office, no employees, and no property in Georgia. The defendant was aware that its wholesale distributor had outlet stores in Georgia and that its product was being sold in Georgia. Continental's systematic and purposeful activities through its independent contractor were sufficient to establish a persistent course of conduct under subsection (3) of the Long Arm Statute. *Id*.

Most analogous to the case presently before the Court is *Betancourt* where there were sufficient minimum contacts to find jurisdiction over a manufacturer of birth control medication.

> Here, Plaintiffs have alleged that they were injured as a result of the "[p]urchase and/or consumption" of defective birth control pills, that were "manufactured, packaged, sold, and distributed," and thus "placed in the stream of commerce by the Defendants and, as a result, were to them foreseeably marketed and distributed within the State of Georgia, among other places." Plaintiffs further claim that the allegedly defective pills "have been used by thousands of persons within the State of Georgia and throughout the United States", and that "Defendants have been, and continue to be, unjustly enriched as a result of the unlawful and/or wrongful collection of, inter alia, payments for the defective birth control pills." In other words, Plaintiffs have alleged that (1) they were injured in Georgia because

4

(2) Patheon, outside the state of Georgia, manufactured, packaged, and sold allegedly defective birth control pills, and that Patheon (3) derived substantial revenue by placing the allegedly defective pills into the stream of commerce with the expectation that they would be marketed and sold in the United States and the State of Georgia. As such, the Court finds that the allegations in Plaintiffs' Third Amended Complaint set forth a prima facie case for personal jurisdiction over Patheon under subsection (3) of Georgia's long-arm statute.

*Betancourt*, 2014 U.S. Dist. LEXIS 184962, at *9-11 (internal citations omitted).

Here, Plaintiff alleges she was injured "as a direct result of her ingestion of Invokana®." Complaint, ¶6. Plaintiff alleges the Invokana® she took was "manufactured, marketed, advertised, distributed, promoted, labeled, tested, and sold" by the Defendants. Complaint, ¶¶13, 36-39, 43, 70. Plaintiff alleges the Invokana® was "placed into the stream of commerce" by Defendants. Complaint, ¶¶45, 66, 70. For the reasons recognized by the Court in *Betancourt*, the Plaintiff here has sufficiently alleged jurisdiction. Plaintiff further expects it will be made clear upon the completion of discovery that Defendants engaged in a persistent course of conduct and derived substantial revenue from the sale of their products in the State of Georgia.

## B. Due Process Requirements

A forum state may exercise personal jurisdiction over a non-resident defendant so long as there exists "minimum contacts" between the defendant and the forum state. *World Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286 (1980); *International Shoe Co. v. Washington*, 326 U.S. 310 (1945). Contact with a forum

state must be such that maintenance of an action against a non-resident defendant does not offend traditional notions of fair play and substantial justice. *Id*. Where the defendant's conduct in connection with the forum state is such that he should reasonably anticipate being called into court there, the minimum contact necessary for due process exists. *Showa Denko K.K. v. Pangle*, 202 Ga. App. at 248 (citing *World Wide Volkswagen*). The court reasoned, "Georgia has an interest in providing an effective means of redress for citizens whose health and welfare has been injured by defective products which our commercial laws permit to be imported into the state." *Id*. at 250.

*Burton v. Subaru of America, Inc*., 646 F. Supp. 78 (N.D. Ga. 1986) is also instructive. There, the district court, applying Georgia law, denied Fuji's motion to dismiss for lack of *in personam* jurisdiction. The plaintiff was injured when he allegedly experienced a failure of the braking and cruise control system in Georgia. The car had been purchased in Virginia Beach from an American retailer who received delivery of the automobile from defendant Subaru of America, Inc., who had purchased the automobile from defendant Fuji in Japan. Similar to the facts in the present case, Subaru of America, Inc. was an entirely independent corporation taking delivery and title of automobiles when loaded for shipment in Japan. *Id*. The district court carefully analyzed Georgia case law and found that defendant Fuji was subject to the jurisdiction in Georgia for the plaintiff's injuries:

> Exercise of jurisdiction under these circumstances is not unfair or contrary to due process considerations. By introducing Subaru automobiles into the stream of commerce in the United States through an exclusive distributorship with defendant SOA, defendant Fuji purposely availed itself of the resulting economic benefits of the sale of the automobiles in the various states, including Georgia.

*Id*. at 80. More recently the Court of Appeals for the Eleventh Circuit held:

> Georgia's long-arm statute permits jurisdiction where a plaintiff's cause of action "arises out of" a nonresident defendant's "transact[ion] of any business within [Georgia]." O.C.G.A. § 9-10-91(1). In light of *Innovative Clinical & Consulting Servs., LLC v. First Nat'l Bank of Ames, Iowa*, we must interpret this statute literally and give full effect to the breadth of its language. 279 Ga. 672, 620 S.E.2d 352, 353, 355 (Ga. 2005).
>
> Interpreted literally, "transacts any business" requires that the "'nonresident defendant has purposefully done some act or consummated some transaction in [Georgia] . . . .'" *Aero Toy Store, LLC v. Grieves*, 279 Ga. App. 515, 631 S.E.2d 734, 737 (Ga. Ct. App. 2006) (quoting *Robertson v. CRI, Inc.*, 267 Ga. App. 757, 601 S.E.2d 163, 166 (Ga. Ct. App. 2004)). That said, a defendant need not physically enter the state.

*Diamond Crystal Brands, Inc. v. Food Movers Int'l*, 593 F.3d 1249, 1264 (11th Cir. 2010).

Additionally, the Court in *Betancourt* clearly analyzed the due process arguments made here by the Defendants stating that the was no dues process barrier because,

> [t]he Court finds that the evidence of record shows that Patheon purposefully manufactured drugs, including the allegedly defective birth control pills at issue in this case, so that they could be marketed and sold in the United States, including the state of Georgia.

7

*Betancourt*, 2014 U.S. Dist. LEXIS 184962, at *22. As described above, Plaintiff here has alleged that the Invokana® she took was part of the production that the Defendants manufactured, marketed and sold in the United States, including the State of Georgia. Therefore, she has sufficiently shown that there are no due process impediments to this Court's exercise of jurisdiction over the Defendants.[1]

## II.     Plaintiff's Substantive Claims Have Been Sufficiently Pled

### 1.     Strict Liability

Defendants argue "[w]hile Plaintiff alleges that Invokana was defective in its manufacture, design, and warnings, she fails to plead sufficient *facts* supporting a claim under these theories." Def. Memorandum, 10 (emphasis in original). Defendants overstate what is required of Plaintiff at the pleading stage in a product liability case.

---

[1] Defendants claim that jurisdiction may not be invoked over Defendant Johnson & Johnson because it is a mere holding company, citing two online references in support. Def. Memorandum, 3. However, "[p]ersonal jurisdiction over a parent corporation may be exercised under the long-arm statute if 'the parent's control over the subsidiary is so complete that, the subsidiary is, in fact, merely a division or department of the parent.'" *Andrews v. Mazda Motor Corp.*, No. 1:14-cv-03432, 2015 U.S. Dist. LEXIS 52773, at *16 (N.D. Ga. Apr. 22, 2015). "Where the alleged liability arises, as in this case, from the manufacture of products presumably sold in contemplation of use here, it should not matter that the purchase was made from an independent middleman or that someone other than the defendant shipped the product into this state." *Jet America v. Gates Learjet Corp.*, 145 Ga. App. 258, 260 (1978). Plaintiff asserts that at this stage of the litigation it would be premature to dismiss Defendant Johnson & Johnson based solely on matters outside the scope of the pleadings without first giving the Plaintiff an opportunity to conduct discovery on the claims made by the Defendants.

> The very nature of a products liability action--where the cause or source of the defect is not obvious to the consumer--would make it difficult for an appellant to pinpoint a specific source of defect against one entity along the chain of distribution prior to discovery. Moreover, the Federal Rules permit pleading in the alternative, even within one single count. *See also* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones. If a party makes alternative statements, the pleading is sufficient if any one of them is sufficient.").

*Bailey v. Janssen Pharmaceutica, Inc*., 288 Fed. Appx. 597, 605 (11th Cir. 2008).

Moreover, the Plaintiff has alleged sufficient specific facts regarding her claims. Plaintiff explained that as of May 15, 2015 the Food & Drug Administration ("FDA") "warned that treatment with SGLT2 inhibitors, including Invokana®, may lead to serious complications, including diabetic ketoacidosis—a condition of high levels of acid accumulating in the blood." Complaint, ¶17. Plaintiff further explained that "the first year after Invokana® was released, more than 450 serious adverse event reports were filed. Many of these reports were related to kidney failure, including fifty-four reports of kidney failure or impairment, fifty-four cases of severe dehydration or fluid imbalance, eleven cases of kidney stones, and fifty-two cases of abnormal weight loss." Complaint, ¶19.

Specifically regarding her own adverse reaction, Plaintiff stated "[a]fter taking Invokana®, Plaintiff began losing significant weight and experienced nausea and repeated vomiting" leading to her admission to "Hamilton Medical Center to treat her nausea and vomiting" where she "was diagnosed with diabetic

ketoacidosis." Complaint, ¶32. To the extent possible without having had any

opportunity to conduct discovery the Plaintiff has stated those facts which are

available to her.   Taking these allegations as true for purposes of Defendants'

motion, Plaintiff has sufficiently alleged a factual basis for her claims.

> The Defendants principally raise two objections to this claim: first, Edwards "does not allege any specific design or manufacturing defect in Defendants' product or describe how the product is defective" and thus fails to plead causation under the *Twombly–Iqbal* standard; and second, Edwards does not specifically allege which Defendant was the designer, manufacturer, distributor, or seller of the insect repellant.

> The Court disagrees. First, *Twombly* and *Iqbal* concern whether the plaintiff's factual allegations, when taken as true and viewed in the light most favorable to him, state a plausible claim for relief. Nothing in Rule 8(a), *Twombly*, *Iqbal*, or any other binding precedent requires a plaintiff to specifically plead facts that establish every element (e.g., causation) in order to state a claim. Second, as the Court recently noted, there is a difference between the evidence needed to survive a motion for summary judgment or judgment as a matter of law and what must be alleged to satisfy Rule 8(a). *Damian v. Montgomery Cnty. Bankshares, Inc.*, No. 1:12-cv-4472-TCB, 981 F. Supp. 2d 1368, 2013 U.S. Dist. LEXIS 159771, 2013 WL 5951960, at *10 n.10 (N.D. Ga. Nov. 8, 2013).

> The complaint states a claim for strict liability. Edwards avers that the insect repellant was (1) manufactured by one (or both) of the Defendants; (2) sold in interstate commerce without any warning that its use could cause third-degree burns; (3) intended for personal use; and (4) caused him to suffer third-degree burns. Under the *Twombly–Iqbal* standard, these facts are sufficient to "permit the [C]ourt to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 678. The Defendants' motion to dismiss count two will thus be denied.

*Edwards v. Wis. Pharmacal Co., LLC*, 987 F. Supp. 2d 1340, 1345-1346 (N.D. Ga.

2013).

Defendants also appear to argue that because Plaintiff does not restate her factual allegations, Complaint, ¶¶13-32, in each cause of action count that she has not sufficiently pleaded her claims. *See, e.g*., Def. Memorandum, 10. All that is required though is a "short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2).

> This requires pleaders to give their opponents fair notice of their claim and the grounds upon which it rests. Intricately detailed factual allegations are not necessary, nor need pleaders factually allege a prima facie case or even identify their precise legal theory . . . The Rules rely on discovery and summary judgment, rather than the pleadings, to flesh out the disputed facts and cull unmeritorious cases.

Baicker-McKee, Janssen and Corr, *Federal Civil Rules Handbook*, p. 361 (2016). There is no requirement that the Plaintiff mechanically and redundantly restate the facts for each and every claim for relief. In actuality, unnecessary repetition is discouraged. *See Bailey*, 288 Fed. Appx. at 603 ("We have recognized that '[p]leading facts not necessary to state a claim is not grounds for dismissal of a complaint . . . .'") (citing *Athens Newspapers v. Jefferson Standard Life Ins. Co*., 729 F.2d 1412, 1417 (11th Cir. 1984); *Edwards*, 987 F. Supp. 2d at 1345-46; *Schmidt v. C.R. Bard, Inc*., No. 6:14-cv-62, 2014 U.S. Dist. LEXIS 146459, at *9 (S.D. Ga. Oct. 14, 2014) (quoting *Edwards*).

Defendants also argue that *Henderson v. Sun Pharms. Indus*., No. 4:11-CV-0060, 2011 U.S. Dist. LEXIS 104989, at *15-16 (N.D. Ga. June 9, 2011) requires dismissal. Def. Memorandum, 11. However, unlike the Plaintiff in *Henderson*,

Plaintiff here has alleged more than that she suffered an adverse reaction. Complaint, ¶¶31-32. Plaintiff here has alleged that there were problems with Invokana® that were specific to that type of drugs and that these problems should have put the Defendants on notice about the potential of injury to its users. Complaint, ¶¶13-24. Therefore, *Henderson* does not mandate dismissal.

Defendant claims that the learned intermediary doctrine constitutes essentially a complete defense to Plaintiff's failure to warn claims. Def. Memorandum, 12-14. At this stage of the litigation though, Plaintiff has not had an opportunity to discover what warnings were, or more importantly should have been, given to both prescribing physicians as well as patients. Therefore, Plaintiff suggests that dismissal of this claim would be premature at this stage of the litigation.

### 2.   Negligence

The rationale described above for the strict liability claims applies equally in the negligence context. Plaintiff refers the Court to the discussion above and relies on those arguments for her negligence claims as well. In addition, the Plaintiff has alleged all of the information necessary to state her negligence claims.

> The Defendants argue that Edwards has not adequately pleaded causes of action for negligence or negligent failure to warn. Specifically, they attack his failure to allege "how any specific Defendant breached any duty in connection with [Edwards]" as well as his failure "to identify any causal connection between any specific Defendant's conduct and any injury suffered by [Edwards], and further fails to specify which Defendant's product caused his injuries." Thus, the Defendants contend that Edwards, like the plaintiffs in two unpublished Northern District

of Georgia cases, fails to plead enough facts to state a claim for negligence under the *Twombly–Iqbal* standard. *See Goodson v. Bos. Scientific*, No. 1:11-cv-3023-TWT, 2011 U.S. Dist. LEXIS 149193, 2011 WL 6840593, at *3 (N.D. Ga. Dec. 29, 2011); *Henderson v. Sun Pharms. Indus*., Inc., 4:11-cv-60-HLM, 2011 U.S. Dist. LEXIS 104989, 2011 WL 4024656, at *8 (N.D. Ga. June 9, 2011).

The Court disagrees. The purpose of Rule 8(a)(2) is to provide "the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555, quoted in *Davis v. Coca–Cola Bottling Co. Consol*., 516 F.3d 955, 974 (11th Cir. 2008). Here, the complaint sets forth the following facts:

> (i) Edwards purchased Coleman Insect Repellant, 40% Deet Sportsmen;

> (ii) the insect repellant is designed to be applied to the user's body;

> (iii) the insect repellant is designed to repel mosquitoes, including those that carry West Nile virus;

> (iv) the Defendants (either individually or jointly) were responsible for designing, developing, manufacturing, testing, packaging, marketing, distributing, labeling, and selling the insect repellant;

> (v) the Defendants placed this product into the stream of commerce;

> (vi) Edwards applied the insect repellant as directed;

> (vii) the insect repellant contains no warnings that using it as directed can cause third-degree burns; and

> (viii) Edwards suffered third-degree burns after applying the insect repellant.

*Edwards*, 987 F. Supp. 2d at 1344. Here, the Plaintiff has alleged the same facts as were found to be sufficient in *Edwards*:

> (i) She purchased and took Invokana® beginning on or around October 21, 2013. Complaint, ¶31;
>
> (ii) Invokana®, the first member of a new class of antidiabetic drugs known as sodium glucose co-transporter 2 ("SGLT2") inhibitors, is designed to work by blocking the reabsorption of glucose by the kidney, increasing glucose excretion, and lowering blood glucose levels in diabetics who have elevated blood glucose levels. Complaint, ¶15;
>
> (iii) Invokana® is designed to improve glycemic control in adults with type 2 diabetes. Complaint, ¶14;
>
> (iv) The Defendants (either individually or jointly) were responsible for the design, research, manufacture, test, advertise, promote, market, sell, and/or distribute the drug Invokana® for treatment of type 2 diabetes. Complaint, ¶¶8-11;
>
> (v) The Defendants placed Invokana® into the stream of commerce. Complaint, ¶¶36, 45, 50, 66, 70, 108;
>
> (vi) Plaintiff used Invokana® as directed and for its intended purpose. Complaint, ¶¶31, 57;
>
> (vii) The Invokana® does not warn of the increased risk of diabetic ketoacidosis or kidney failure, merely stating that a "possible side effect" of Invokana® is "kidney problems." Complaint, ¶20; and
>
> (viii) Plaintiff sustained serious and permanent injuries, including diabetic ketoacidosis. Complaint, ¶62.

Therefore, as did the Plaintiff in *Edwards*, the Plaintiff here has sufficiently alleged her negligence claims.

### 3.    Fraud

Plaintiff has not yet had any opportunity to conduct discovery into what representations were or should have been made by the Defendants. She has alleged a number of facts concerning adverse reactions suffered by users of Invokana® that should have been made known to the Plaintiff and/or her prescribing physician. Complaint, ¶¶17-20. At this stage in the litigation without the benefit of any discovery whatsoever, the Plaintiff has no reasonable means to provide more detail about what the Defendants knew or should have known and what they additional information or warnings they should have provided to those using and or prescribing Invokana®. Therefore, dismissal of Plaintiff's fraud claim would be premature at this stage of the litigation, even in light of Rule 9(b)'s additional pleading requirements.  Alternatively, Plaintiff asks that she be given leave to reassert this claim once sufficient discovery has been completed. Baicker-McKee, Janssen and Corr, *Federal Civil Rules Handbook*, p. 3395 (2016).

### 4.    Negligent Misrepresentation

As explained above, Plaintiff has not yet had any opportunity to conduct discovery into what representations were or should have been made by the Defendants. She has alleged a number of facts concerning adverse reactions suffered by users of Invokana® that should have been made known to the Plaintiff and/or her prescribing physician. Complaint, ¶¶17-20. At this stage of the litigation without the

benefit of any discovery whatsoever, the Plaintiff has no reasonable means to provide more detail about what the Defendants knew or should have known and what they additional information or warnings they should have provided to those using and or prescribing Invokana®. Therefore, dismissal of Plaintiff's negligent misrepresentation claim would be premature at this stage of the litigation, even in light of Rule 9(b)'s additional requirements.  Alternatively, Plaintiff asks that she be given leave to reassert this claim once sufficient discovery has been completed. Baicker-McKee, Janssen and Corr, *Federal Civil Rules Handbook*, p. 3395 (2016).

### 5.    Consumer Protection

Under O.C.G.A. § 10-1-390 *et seq.*, a private GFBPA claim has three elements: a violation of the Act, causation, and injury.[2] *E.g., Tiismann v. Linda Martin Homes Corp.*, 279 Ga. 137, 139 (Ga. 2005). Here Plaintiff has properly alleged all three elements. Specifically, Plaintiff has alleged:

> *A Violation Of The Act*—Complaint ¶117 ("Defendants advertised and promised that Invokana® was of a particular standard, quality, or grade when in fact it was not"), ¶120 ("Defendants violated consumer protection laws through their use of false and misleading representations or omissions of material fact relating to the safety of Invokana®");

> *Causation*—Complaint ¶118 ("As a result of the foregoing acts and omissions, Plaintiff was caused to suffer serious and dangerous side

---

[2] The notice provision of the GFBPA expressly provides that "[t]he demand requirements of this subsection shall not apply if the prospective respondent does not maintain a place of business or does not keep assets within the state." O.C.G.A. § 10-1-399(b). Defendants' have no physical presence in the State of Georgia, thus the notice provisions of the GFBPA are inapplicable.

effects including but not limited to, diabetic ketoacidosis, as well as other severe and personal injuries"); and,

*Injury*—Complaint ¶118 ("Plaintiff was caused to suffer serious and dangerous side effects including but not limited to, diabetic ketoacidosis, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, and financial expenses for hospitalization and medical care"), ¶119 ("Plaintiff used Invokana® and suffered ascertainable losses as a result of Defendants' actions in violation of the consumer protection laws.

The Plaintiff has therefore alleged all the elements necessary to support her

claim under the GFBPA.

### 6.    Punitive Damages

Under Georgia law, punitive damages "are awardable 'solely to punish, penalize, or deter a defendant.'" *Banks v. ICI Ams., Inc*., 266 Ga. 607, 469 S.E.2d 171 (Ga. 1996) (quoting O.C.G.A. § 51-12-5.1(c)). Punitive damages cannot be awarded upon proof of mere negligence; instead, "there must be clear and convincing evidence that the defendant's actions showed 'willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to the consequences.'" *Id.* (quoting O.C.G.A. § 51-12-5.1(b)).

Edwards states a claim for punitive damages. He alleges that the Defendants not only knew that the insect repellant placed the general public at risk but also willfully chose not to disclose these risks. This is enough to satisfy Rule 8(a).

*Edwards*, 987 F. Supp. 2d at 1347-1348. In this case, Plaintiff has alleged that

"Defendants knew or were recklessly indifferent in not knowing that Invokana® was

inherently dangerous with respect to the risk of diabetic ketoacidosis." Complaint,

¶125. Plaintiff further alleges, "Defendants' actions were performed intentionally,

17

willfully, wantonly, and/or purposefully on Plaintiff." Complaint, ¶127. Finally, Plaintiff alleges "Defendants continued to promote the safety of Invokana®, even after they knew of the risks associated with it." Complaint, ¶128. As in *Edwards*, the Plaintiff here has sufficiently pled her claim for punitive damages under Georgia law despite the Defendants' contentions to the contrary.

> [T]he Court disagrees with Defendants' contention that *Iqbal's* standards governing statements of claims mandates dismissal of Plaintiff's prayer for punitive damages.

> Therefore, Plaintiff's request for punitive damages is subject neither to dismissal nor striking.

> This is not to say, however, that Defendants are not entitled to know the facts supporting Plaintiff's demand for punitive damages. Indeed, Georgia law requires an award of punitive damages to be specifically prayed for in the complaint. Under this statute, a lone statement in the prayer that plaintiff be awarded punitive damages is insufficient. However, when a specific prayer for punitive damages is coupled with allegations in the body of the Complaint that are sufficient to support an award of punitive damages under O.C.G.A. § 51-12-5.1(b), the requirements of O.C.G.A. § 51-12-5.1(d)(1) are met. Here, in addition to specifically requesting punitive damages in his prayer for relief, Plaintiff alleges in the body of his Complaint that Defendants knew of the Plug's defects, knew of the dangerous nature of the defects, and still represented that the Plug was safe. Such conduct, if proven to be true, would constitute willful misconduct warranting punitive damages under O.C.G.A. § 51-12-5.1.

> Whether discovery will reveal facts sufficient to carry Plaintiff's burden of proving his entitlement to punitive damages by clear and convincing evidence is yet to be seen, but he has shown enough to satisfy O.C.G.A. § 51-12-5.1(d)(1)'s requirement that punitive damages be specifically prayed. Therefore, Defendants' motion regarding Plaintiff's punitive damages request is denied.

*Schmidt*, 2014 U.S. Dist. LEXIS 146459 at \*19-20 (internal quotation marks and citations omitted).

## III.    Plaintiff's Claims Are Not Preempted

Defendants claim in a somewhat indecipherable argument that Plaintiff's claims are preempted by federal law. Plaintiff will attempt to unravel and distinguish the assertions made by Defendants in the order they were presented.

### A.    The Supreme Court Cases Cited By Defendants Do Not Mandate Dismissal

Defendants cite three Supreme Court cases that they claim require dismissal with prejudice, at least with respect to failure to warn claims. Def. Memorandum, 18-21. However, none of the cases cited mandate dismissal of Plaintiff's claims.

> In short, Wyeth has not persuaded us that failure-to-warn claims like Levine's obstruct the federal regulation of drug labeling. Congress has repeatedly declined to pre-empt state law, and the FDA's recently adopted position that state tort suits interfere with its statutory mandate is entitled to no weight. Although we recognize that some state-law claims might well frustrate the achievement of congressional objectives, this is not such a case. . . . We conclude that it is not impossible for Wyeth to comply with its state-and federal-law obligations and that Levine's common-law claims do not stand as an obstacle to the accomplishment of Congress' purposes in the FDCA.

*Wyeth v. Levine*, 555 U.S. 555, 581 (2009). The second case cited by Defendants reiterates *Wyeth* and makes it clear that preemption does not apply absent the involvement of a generic drug.

> We recognize that from the perspective of Mensing and Demahy, finding pre-emption here but not in *Wyeth* makes little sense. Had Mensing and Demahy taken Reglan, the brand-name drug prescribed by their doctors, Wyeth would control and their lawsuits would not be pre-empted. But because pharmacists, acting in full accord with state law, *substituted generic metoclopramide* instead, federal law pre-empts these lawsuits.

*PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567, 2581 (2011) (emphasis added). The Plaintiff is this case took brand name Invokana®, not a generic substitute. Complaint, ¶31. Finally, the third case cited by the Defendants simply reiterates that claims of failure to warn involving generic medications are preempted. "As *PLIVA* made clear, federal law prevents *generic drug manufacturers* from changing their labels." *Mut. Pharm. Co. v. Bartlett*, 133 S. Ct. 2466, 2476 (2013) (emphasis added). Thus, these cases provide no basis for dismissal at this stage of the litigation.

The Defendants also cite several lower court decisions in jurisdiction not binding on this Court that extend the *Mensing* and *Bartlett* opinions beyond the realm of generic drugs. Def. Memorandum, 22-23. There is no consensus that these opinions are consistent with *Mensing* and *Bartlett*.

> Looking to the preemption argument, the Court notes that the scope of the Bartlett holding has been the subject of much debate among lower courts. Some courts read Bartlett narrowly to apply only to generic drugs. *See, e.g., Estate of Cassel v. Alza Corp.*, No. 12-771, 2014 U.S. Dist. LEXIS 27924, 2014 WL 856023 (W.D.Wis. Mar. 5, 2014); *Dopson—Troutt v. Novartis Pharms. Corp.*, No. 06-1708, 975 F.Supp.2d 1209, 2013 WL 5330463 (M.D.Fla. Sept. 23, 2013). Others disagree, finding that Bartlett preempts design-defect claims against brand-name manufacturers as well. *See, e.g., Thompson v. Allergan USA, Inc.*, No. 4:13CV00030 AGF, 993 F.Supp.2d 1007, 2014 WL

308794 (E.D.Mo. Jan. 28, 2014). It is therefore not settled law as to whether federal law preempts Ms. Levitt's claims[.]

*Levitt v. Merck Sharp & Dohme Corp.* (In re Vioxx Prods. Liab. Litig.), MDL NO. 1657, SECTION L, 2015 U.S. Dist. LEXIS 52756, at *29 (E.D. La. Apr. 20, 2015); *see also Guenther v. Novartis Pharm. Corp.*, No: 6:08-cv-456, 2013 U.S. Dist. LEXIS 123696 (M.D. Fla. Aug. 29, 2013) ("[T]he two cases primarily cited by Novartis for this proposition — *Mutual Pharmaceutical Co., Inc. v. Bartlett*, 133 S.Ct. 2466, 186 L. Ed. 2d 607 (2013) and *PLIVA, Inc. v. Mensing*, 131 S.Ct. 2567, 180 L. Ed. 2d 580 (2011) — are inapposite because they involve manufacturers of generic drugs, who do not possess the ability to alter drug labels through the CBE regulations (or otherwise).").

Plaintiff asserts that the cases cited by Defendants cannot be reconciled with the explicit language in *Mensing* and *Bartlett*, are outliers, and should be disregarded by the Court. As one District Court in the Eleventh Circuit noted about the rationale espoused by Defendants and the lower court cases they cite, "[i]f this is the correct interpretation of *Bartlett*, then it appears virtually all design defect cases against generic and brand-name prescription drug manufacturers alike would be preempted." *Trahan v. Sandoz, Inc.*, No. 3:13-cv-350, 2015 U.S. Dist. LEXIS 66869, at *22 n.5 (M.D. Fla. Mar. 26, 2015). Defendants' interpretation of the law of federal preemption cannot be correct.

## **CONCLUSION**

For the reasons stated above, Plaintiff respectfully requests that Defendants Motion to Dismiss be denied and the case allowed to proceed forward. Alternatively, for any claims that the Court feels have not been sufficiently pled, Plaintiff asks that she be given leave to amend the Complaint to resolve any issues.

Dated:  February 10, 2016

> *s/ Mark E. Silvey*
> Mark E. Silvey (GA Bar No. 646837)
> Adam A. Edwards*
> Justin G. Day*
> GREG COLEMAN LAW PC
> First Tennessee Plaza
> 800 S. Gay Street, Suite 1100
> Knoxville, TN 37929
> Telephone: (865) 247-0800
> Facsimile: (865) 522-0049
> mark@gregcolemanlaw.com
> adam@gregcolemanlaw.com
> justin@gregcolemanlaw.com
> *to be admitted *pro hac vice*
> *Counsel for Plaintiff*

I certify that the brief has been prepared with Times New Roman 14 point font in accordance with Rules 5.1C and 7.1B of the Local Rules of the Northern District of Georgia.

> *s/ Mark E. Silvey*
> Mark E. Silvey (GA Bar No. 646837)

## **CERTIFICATE OF SERVICE**

I, Mark E. Silvey, hereby certify that a copy of the foregoing was filed using this Court's CM/ECF service, which will send notification of such filing to all counsel of record this 10th day of February, 2016.

*s/ Mark E. Silvey*
Mark E. Silvey (GA Bar No. 646837)
