IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

| | |
|---|---|
| _____ ) | |
| PAULA BRAZIL, ) | |
| ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION |
| ) | FILE NO: 4:15-CV-00204-HLM |
| JANSSEN RESEARCH & ) | |
| DEVELOPMENT LLC, et al. ) | |
| ) | |
|     Defendants. ) | |
| _____ ) | |

## **DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

This is a product liability action concerning Invokana—a prescription medication approved by the Food and Drug Administration ("FDA") for the treatment of Type 2 diabetes. Plaintiff alleges that she developed diabetic ketoacidosis as a result of using Invokana. She asserts six claims against Janssen Pharmaceuticals, Inc., ("Janssen"), Janssen Research & Development, LLC ("JRD"), Janssen Ortho, LLC ("Ortho"), and Mitsubishi Tanabe Pharma Corporation ("Mitsubishi").

The Court previously dismissed Plaintiff's claims on the grounds that they

were insufficiently pled.[1]   *See* Doc. 20 (Mar. 24, 2016).   Plaintiff's Amended Complaint does *not* cure all the pleading deficiencies that led the Court to dismiss her claims.   Nor does it cure other failures discussed in the initial Motion to Dismiss filed by Defendants Janssen, JRD, and Ortho.   *See* Doc. 10–1 (Jan. 7, 2016).   As explained below, the Court should dismiss Plaintiff's amended claims as against Janssen, JRD, and Ortho for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[2]

***First***, Plaintiff's amended claims do not meet the plausibility standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).   Her claims collectively are premised on alleged defects in Invokana's design and warnings.   But Plaintiff *still* does not plead sufficient facts to support a plausible claim.

***Second***, Plaintiff's design defect-based claims against JRD (Counts 1, 2, and 4) are preempted by federal law to the extent they are based on a failure to change Invokana's chemical design.   When the Court dismissed Plaintiff's initial Complaint, it held that Plaintiff's claims were not preempted because, under

---

[1] The Court also dismissed Plaintiff's claims against Johnson & Johnson based on lack of personal jurisdiction.

[2] Plaintiff still has not served Mitsubishi.  This motion is therefore not brought on behalf of Mitsubishi.

Georgia law, Plaintiff could pursue her claims on a failure-to-warn theory.  This Motion does *not* challenge that aspect of the Court's ruling.  Instead, consistent with the Court's ruling, Defendants seek dismissal of Plaintiff's claims against JRD only to the extent they are based on a failure to change Invokana's chemical design.[3]  As demonstrated by two recent cases that the Court did not have an opportunity to consider when it dismissed Plaintiff's initial Complaint, *those* claims plainly are preempted by federal law and subject to dismissal notwithstanding that the Court has allowed Plaintiff to pursue failure-to-warn-based design claims.  *See Barcal v. EMD Serono, Inc.*, 2016 WL 1086028 (N.D. Ala. Mar. 21, 2016); *Batoh v. McNeil-PPC, Inc.*, --- F. Supp. 3d  ---, 2016 WL 922779 (D. Conn. Mar. 10, 2016).

**Third**, the Court should dismiss all of Plaintiff's claims as against Ortho because they too are preempted by federal law.  Plaintiff's claims against Ortho are premised on an alleged failure to properly label Invokana.  Federal law, however, permits *only* the holder of a New Drug Application ("NDA") to change the labeling of an FDA-approved prescription drug.  Here, Janssen holds the NDA for Invokana.  Because Ortho does not hold the NDA, it had no authority to change the

---

[3] Plaintiff has alleged design defect-based claims only against JRD and Mitsubishi. As explained, Plaintiff has not yet served Mitsubishi.

drug's labeling.  All of Plaintiff's claims against Ortho are therefore preempted.

## I.  **BACKGROUND.**

Following the dismissal of her initial Complaint, Plaintiff filed her Amended Complaint on April 14, 2016.  She asserts claims for strict liability (Count 1), design defect (Count 2), failure to warn (Count 3), negligence (Count 4), violation of the Fair Businesses Practices Act (Count 5), and punitive damages (Count 6).

Plaintiff alleges that she started taking Invokana on October 21, 2013 and that, as a result, she developed diabetic ketoacidosis on or about November 3, 2013.  *See* Am. Compl. ¶¶ 4–5, 31–32.  Though Plaintiff also alleges that Invokana can cause kidney failure (*see id.* ¶¶ 20, 34), she does *not* claim to have experienced that condition.

Plaintiff sues Janssen and Ortho for their alleged role in the manufacture, marketing, advertising, distribution, promotion, labeling and sale of Invokana.  *See* Am. Compl. ¶¶ 8, 9, 12, 35, 37, 42, 44, 59, 78.  By contrast, she sues JRD and Mitsubishi for their alleged role in the research, design and testing of the drug.  *See id.* ¶¶ 7, 10, 12, 35, 37, 44, 52, 78.  Consistent with these allegations, Plaintiff asserts her failure-to-warn and Fair Business Practices Act claims (Counts 3 and 5) against Janssen and Ortho only.  Similarly, she asserts her design defect claim (Count 2) against JRD and Mitsubishi only.  Although Plaintiff asserts her strict

liability and negligence claims (Counts 1 and 4) against all Defendants, these claims are based on the theory that Janssen and Ortho are responsible for a failure to warn whereas JRD and Mitsubishi are responsible for a failure to properly design Invokana.  *See id.* ¶ 44 (alleging in Count 1 that Janssen and Ortho "failed to warn and place adequate warnings and instructions" on Invokana whereas JRD and Mitsubishi "failed to adequately research, design, and test" the drug); ¶ 77 (alleging in Count 4 that Janssen and Ortho "failed to exercise reasonable care in the marketing, advertising, and labeling" of Invokana whereas JRD and Mitsubishi "failed to exercise reasonable care in the design" of the drug).

## II.   ARGUMENT.

The Court should dismiss the Amended Complaint for the reasons below.

### A.   The Court Should Dismiss All Of Plaintiff's Claims Because They *Still* Are Insufficiently Pled.

Dismissal of claims is appropriate under Rule 12(b)(6) when a plaintiff fails to allege facts sufficient "to raise a right to relief above the speculative level" or fails to "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 570 (2007).

A claim is plausible only if the plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  Where a complaint pleads facts that are "merely

consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (internal quotation marks omitted). Further, although a court generally must accept well-pleaded facts as true on a motion to dismiss, this principle does *not* apply to legal conclusions, conclusory allegations, or unwarranted factual inferences. *See id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombly*, 550 U.S. at 555 (explaining that plaintiff's obligation to provide the *grounds* of her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Chandler v. Sec'y of Fla. Dep't of Transp.,* 695 F.3d 1194, 1199 (11th Cir. 2012) (explaining that courts need not accept legal conclusions as true).

### 1.    Plaintiff's strict liability claim (Count 1) fails.

To state a claim for strict liability, a plaintiff must show (1) the defendant manufactured the product; (2) the product, when sold, was not merchantable and reasonably suited to its intended use; and (3) the product's defective condition proximately caused the plaintiff's injury. *See* Doc. 20 at 42 (citing O.C.G.A. § 51–1–11(b); *Chicago Hardware & Fixture Co. v. Letterman*, 510 S.E.2d 875, 877 (Ga. App. 1999)).   Under Georgia law, a product may be defective in its manufacture, design, or warnings. *See id.*   Here, Plaintiff has failed to plead sufficient facts to

state a plausible claim under *any* theory.

### a. Plaintiff has not pled a plausible manufacturing defect claim.

To prevail on a manufacturing defect claim, a plaintiff must show that the product deviated from the manufacturer's specifications and the defect proximately caused her injury. *See Jones v. Amazing Prods., Inc.*, 231 F. Supp. 2d 1228, 1236 (N.D. Ga. 2002). The Court dismissed Plaintiff's initial strict liability claim in part because Plaintiff did not allege "any specific . . . manufacturing defect" and did "not tie[]" her claimed injury to any such defect. Doc. 20 at 44–45. Plaintiff's amended allegations do *nothing* to cure those deficiencies. Instead, Plaintiff again alleges simply that Invokana was defective "as . . . manufactured." Am. Compl. ¶¶ 38, 44. Nowhere in her Amended Complaint, however, does Plaintiff allege *how* the drug supposedly deviated from its intended design or *how* any manufacturing defect caused her purported injuries. Thus, her claim remains insufficiently pled. *See* Doc. 20 at 44–45; *see also Henderson v. Sun Pharms. Indus., Ltd.*, 2011 WL 4024656, at *5 (N.D. Ga. June 9, 2011) (Murphy, J.) (dismissing claim where plaintiff did not allege specific manufacturing defect proximately caused injury); *Moore v. Mylan Inc.*, 840 F. Supp. 2d 1337, 1344–45 (N.D. Ga. 2011) (similar).

### b. Plaintiff has not pled a plausible design defect claim.

The existence of a defect is "an essential element" of a products liability

claim. *Udoinyion v. Michelin N. Am., Inc.*, 721 S.E.2d 190, 193 (Ga. Ct. App. Dec. 8, 2011).  A design defect claim is therefore deficient "if it fails to allege a specific design . . . defect." *Coney v. Mylan Pharms., Inc.*, 2012 WL 170143, at *6 (S.D. Ga. Jan 19, 2012).

The Court dismissed Plaintiff's initial strict liability claim in part because Plaintiff did not allege "any specific design . . . defect" and did "not tie[]" her claimed injury to any such defect.  Doc. 20 at 44–45.  Again, Plaintiff's amended allegations do *nothing* to cure those deficiencies.  Plaintiff alleges simply that Invokana is defective because it "prohibit[s] glucose absorption in the kidneys and caus[es] overproduction of acids (i.e., ketones) in some patients' blood, leading to ketoacidosis."  Am. Compl. ¶ 34.  But these are the *precise* allegations that the Court already found insufficient to state a plausible claim.  *Compare* Compl. ¶¶ 15, 17 (alleging that Invokana and other SGLT2 inhibitors "are designed to work by blocking reabsorption of glucose by the kidney" and that these drugs cause diabetic ketoacidosis by leading to "high levels of acid accumulating in the blood"), *and* Doc. 18 (Feb. 10, 2016) at 12 (arguing that allegations in paragraphs 13 through 24 of initial Complaint show that Plaintiff has pled a plausible strict liability claim), *with* Doc. 20 at 44 ("Plaintiff . . . has not alleged any specific design . . . defect. While Plaintiff has pleaded facts that Invokana may cause diabetic ketoacidosis,

Plaintiff has not tied that harm to any design . . . defect.").

The Court was on firm ground when it dismissed Plaintiff's initial claim. *See Henderson*, 2011 WL 4024656, at *5 (dismissing claim because while plaintiff alleged that drug risks exceeded benefits, he failed to allege "any specific design . . . defect that proximately caused" his injuries); *Coney*, 2012 WL 170143, at *6 (similar); *Moore*, 840 F. Supp. 2d at 1344–45 (similar); *Goodson v. Boston Scientific,* 2011 WL 6840593, at *4 (N.D. Ga. Dec. 29, 2011) (similar).

In addition, the Eastern District of Louisiana recently dismissed a virtually *identical* design defect claim in another Invokana case, finding that the plaintiff there "merely recite[d] the elements of a defective design claim" and "fail[ed] to plead or support how Invokana's design is defective, in what way Invokana could have remedied the defect, or how the alleged defect caused her particular injuries." *Guidry v. Janssen Pharms., Inc.*, 2016 WL 633673, at *4 (E.D. La. Feb. 17, 2016).

This Court should re-affirm its earlier Order, should follow *Guidry* and the other authorities discussed above, and should dismiss Plaintiff's amended strict liability claim insofar as it is premised on an alleged defect in Invokana's design.

### c. Plaintiff has not pled a plausible failure-to-warn claim.

To succeed on a failure-to-warn claim, a plaintiff must prove that (1) the manufacturer failed to provide her prescribing physician with adequate warnings

about risks of which it knew or should have known, and (2) the inadequate warning proximately caused her injuries.  *See, e.g.*, *Dietz v. Smithkline Beecham Corp.*, 598 F.3d 812, 815 (11th Cir. 2010); *McCombs v. Synthes (U.S.A.)*, 587 S.E.2d 594, 595 (Ga. 2003).  Despite amending her initial Complaint, Plaintiff *still* fails to plead a plausible claim.

As an initial matter, Plaintiff's claim fails to the extent it is premised on a failure to warn about a purported risk of kidney failure.  As the court in *Guidry* recently confirmed, a plaintiff *cannot* premise a claim on a failure to warn about a risk that did not materialize.  *See* 2016 WL 633673, at *4 (dismissing claim premised on failure to warn about risk of ketoacidosis because plaintiff did not experience that condition).  Many other courts have reached the same conclusion.[4] Because Plaintiff does *not* allege that she experienced kidney failure, she cannot

---

[4] *See, e.g.*, *Mills v. United States*, 764 F.2d 373, 379 (5th Cir. 1985) ("[A] determination that warnings were inadequate with respect to some other condition does not bear on our conclusion that [decedent] was adequately informed of the risk . . . ."); *Austin v. Bayer Pharms. Corp.*, 2013 WL 5406589, at *7 (S.D. Miss. Sept. 25, 2013) ("Plaintiff failed to state a claim for the failure to warn of side effects which Plaintiff did not suffer, such as perforation, migration, or ectopic pregnancy.  If Plaintiff did not suffer from those conditions, Defendant's failure to warn of them did not cause any injury."); *Mason v. Smithkline Beecham Corp.*, 2010 WL 2697173, at *5 n.3 (C.D. Ill. July 7, 2010) ("[A] warning is only inadequate if it fails to list risks or side effects that do occur."); *In re Fosamax Prods. Liab. Litig.*, 2010 WL 1257299, at *5 (S.D.N.Y. Mar. 26, 2010) ("Plaintiff cannot establish proximate cause without evidence that [defendant] fail[ed] to warn of the specific risk that . . . materialized . . . .").

base her claim on a purported failure to warn about that risk.[5]

Plaintiff's claim also fails to the extent it is premised on an alleged failure to warn her prescribing physician about a purported risk of diabetic ketoacidosis. *See* Am. Compl. ¶¶ 58–59. In particular, Plaintiff *still* does not allege any *facts* to support a reasonable inference that Defendants had a duty to warn about that purported risk.

Under Georgia law, a manufacturer has a duty to warn only about risks of which it knew or should have known before the plaintiff's injury. *See* O.C.G.A. § 51–1–11(c). Although Plaintiff alleges that Janssen and Ortho knew or should have known about a risk of diabetic ketoacidosis at the time she used Invokana (*see* Am. Compl. ¶ 68), that formulaic allegation is a mere legal conclusion. The Court need not and should not accept it as true. *See Twombly*, 550 U.S. at 555

_____

[5] In any event, the Prescribing Information for Invokana *did* warn about a risk of kidney failure. *See* http://www.accessdata.fda.gov/drugsatfda_docs/label/2013/204042s000lbl.pdf (last visited May 15, 2016) (warning in Section 5.3 that "renal function abnormalities can occur after initiating" Invokana and warning further in Section 6.1 that "[u]se of canaglifozin was associated with an increased incidence of renal-related adverse reactions (e.g., increased blood creatinine, . . . renal impairment, and acute renal failure)"). Not surprisingly, the *Guidry* court *rejected* a claim premised on an alleged failure to warn about a risk of kidney failure. *See* 2016 WL 633673, at *4 & n.9 (finding that plaintiff failed to "provide any factual basis for her claim that the defendants failed to adequately warn of acute kidney injury and acute kidney failure" and that "the Prescribing Information of Invokana . . . *does* contain warnings of renal-related adverse effects" (emphasis added)).

(explaining that plaintiff's obligation to provide the *grounds* of her entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Chandler*, 695 F.3d at 1199 (explaining that courts need not accept legal conclusions as true).

Missing from Plaintiff's Amended Complaint are any *facts* to substantiate her conclusory allegation.  In fact, Plaintiff acknowledges that it was not until May 15, 2015—*i.e.*, 19 months *after* she allegedly was injured on November 3, 2013— that the FDA advised that diabetic ketoacidosis *may* be a complication of Invokana and other SGLT2 inhibitors.[6]  *See* Am. Compl. ¶ 17.  Plaintiff's allegations about the timeline of changes to Invokana's Prescribing Information (*see id.* ¶¶ 62–67) do not change the fact that her alleged injury occurred *19 months before* the FDA issued its advisory.  Because Plaintiff has not sufficiently alleged that Janssen and

---

[6] The FDA's advisory was based on 20 adverse events reported in patients treated with various SGLT2 inhibitors between March 2013 and June 2014.  *See* Am. Compl. ¶ 18.  Plaintiff does not allege how many of these anecdotal reports (if any) involved patients treated with Invokana *before* she allegedly was injured. Moreover, anecdotal adverse event reports such as those identified in the FDA's advisory do not and cannot establish causation.  *See McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1254 (11th Cir. 2005) ("Simply stated, case reports raise questions; they do not answer them."); *Rider v. Sandoz Pharms. Corp.*, 295 F.3d 1194, 1199 (11th Cir. 2002) ("[C]ase reports alone ordinarily cannot prove causation."); *Soldo v. Sandoz Pharms. Corp.*, 244 F. Supp. 2d 434, 537 (W.D. Pa. 2003) ("[T]he great weight of authority—and the most current authority—squarely rejects the use of ADEs [*i.e.*, adverse drug experiences] and case reports for the purpose of establishing general causation.") (collecting authority).

Ortho knew or should have known about a risk of diabetic ketoacidosis *before* her alleged injury, the Court should dismiss her claim.  *See also Stupak v. Hoffman-La Rouche, Inc.*, 326 F. App'x 553, 560 (11th Cir. 2009) (holding that 17 case reports were "insufficient to establish that Roche knew or show have known that Accutane could cause suicide without symptoms"); *Rodriguez v. Stryker Corp.*, 680 F.3d 568, 572 (6th Cir. 2012) (disposing of failure-to-warn claim where medical literature did not support conclusion that risk of chondrolysis was knowable at time of plaintiff's surgery); *Smith v. Peddinghaus Corp.*, 2007 WL 2484315, at *5 (N.D. Ga. Aug. 29, 2007) (same, where plaintiff failed to show that defendant "knew or constructively knew of danger at the time of the sale").[7]

Finally, although Plaintiff alleges that her physician was unaware of a potential risk of diabetic ketoacidosis (*see* Am. Compl. ¶ 69), she *still* does not allege that her physician would have made a different prescribing decision had he received an adequate warning.  Thus, Plaintiff has failed to sufficiently plead that a defect in Invokana's Prescribing Information proximately caused her alleged

---

[7] Although the *Guidry* court suggested in dicta that the FDA's May 15, 2015 advisory might support a failure-to-warn claim, the court did not have occasion to consider the argument that Defendants make here because the plaintiff's claim in *Guidry* was premised on an alleged kidney injury, *not* diabetic ketoacidosis.  *See* 2016 WL 633673, at *4.  In any event, as the *Guidry* court noted, an allegation that is "merely consistent" with a defendant's liability is insufficient under *Twombly-Iqbal*.  *Id.*

injury. *See Deitz*, 598 F.3d at 816 (explaining that plaintiff could not demonstrate allegedly inadequate warning proximately caused her injury where physician testified that he still would have prescribed drug despite adequate warning); *Jones v. Sofamor S.N.C.*, 1999 WL 1062103, at *7 (N.D. Ga. Apr. 29, 1999) (explaining that where learned intermediary "would have taken the same course of action even with the information the plaintiff contends should have been provided, . . . the causal link is broken and the plaintiff cannot recover").

### 2 .    Plaintiff's design defect claim (Count 2) fails.

Plaintiff's design defect claim fails for the same reasons as the design defect component of her strict liability claim.  Thus, the Court should dismiss Count 2.

Count 2 also fails for an additional, independent reason—it is directed to the *wrong* Defendants.  When the Court dismissed Plaintiff's initial Complaint, it held that Plaintiff's design defect claims were not preempted because, under Georgia law, Plaintiff could pursue her claims on a failure-to-warn theory.  *See* Doc. 20 at 76 ("State law claims, including a design defect claim, requiring a brand name drug manufacturer to provide a more robust warning are therefore not preempted.").  But Count 2 is directed only against JRD and Mitsubishi—*i.e.*, defendants that, according to Plaintiff's *own* allegations, were involved in the research, design, and testing of Invokana but *not* its labeling.  *See* Am. Compl. ¶¶

7, 10, 12, 35, 37, 44, 52, 78.  According to Plaintiff's amended allegations, *only* Janssen and Ortho are responsible for Invokana's labeling.  *See id.* ¶ 12 (alleging that Janssen and Ortho "labeled" Invokana); ¶ 35 (same); ¶ 44 (alleging that Janssen and Ortho "failed to warn and place adequate warnings and instructions on Invokana"); ¶¶ 59, 78 (similar).  Consistent with these allegations, Plaintiff directs her failure-to-warn claim (Count 3) only against Janssen and Ortho.  Because the Court allowed Plaintiff's design claims to proceed on a failure-to-warn theory, and because Plaintiff does not allege that JRD is responsible for the drug's labeling, the Court can and should dismiss Count 2 as to JRD for this additional reason.

### 3 .    Plaintiff's failure-to-warn claim (Count 3) fails.

Plaintiff's failure-to-warn claim fails for the same reasons as the failure-to-warn component of her strict liability claim.    Accordingly, the Court should dismiss Count 3.  *Accord Brown v. Roche Labs., Inc.*, 567 Fed. App'x 860, 863 (11th Cir. 2014) (affirming dismissal of negligent misrepresentation claim because it was "merely a reframing" of failure-to-warn claim); Doc. 20 at 54–55 (dismissing Plaintiff's negligent misrepresentation claim in part on grounds that it was duplicative of failure-to-warn claim).

### 4 .    Plaintiff's negligence claim (Count 4) fails.

Like her strict liability claim, Plaintiff's negligence claim is premised on an

alleged failure to properly design, manufacture and label Invokana. *See* Am. Compl. ¶¶ 77–78. Her negligence claim therefore fails for the same reasons as her strict liability claim. *Accord* 567 Fed. App'x at 863; Doc. 20 at 54–55. Accordingly, the Court should dismiss Count 4.

### 5 .   Plaintiff's consumer protection claim (Count 5) fails.

The Court dismissed Plaintiff's initial consumer protection claim because it found that her allegations "amount merely to restating the elements of the cause of action without any factual support." Doc. 20 at 55–56. Plaintiff has done *nothing* to cure the deficiencies that led the Court to dismiss her claim. Indeed, the allegations that underlie Plaintiff's amended claim are *precisely the same* as those of her initial claim. *Compare* Am. Compl. ¶¶ 12–32, 83–90, *with* Compl. ¶¶ 13–32, 114–23. In other words, *nothing* has changed. Thus, the Court should dismiss Plaintiff's amended claim for the same reason that it dismissed her initial claim. *See also Barge v. Bristol-Myers Squibb Co.*, 2009 WL 5206127, at *11 (D.N.J. Dec. 30, 2009) (dismissing claim under Georgia's Fair Business Practices Act because plaintiff did not identify allegedly deceptive materials or allege that any deceptive act influenced his physician's prescribing decision).

### 6 .   Plaintiff's punitive damages claim (Count 6) fails.

Finally, because Plaintiff fails to plead a plausible claim, her derivative

claim for punitive damages also fails.  *See D.G. Jenkins Homes, Inc. v. Wood,* 582 S.E.2d 478, 482 (Ga. Ct. App. 2003).  In addition, her claim is insufficiently pled because she does not allege "*facts* that, if true, would demonstrate the referenced elements required for the award of punitive damages under Ga. Code Ann. § 51–12–5.1(b)." *Taylor v. Miller Coors*, *LLC,* 2014 WL 4179918, at *1 (M.D. Ga. Aug. 20, 2014).  Plaintiff alleges that Janssen and Ortho intentionally and willfully "misrepresented and downplayed the risks of serious injuries" associated with Invokana.  Am. Compl. ¶ 94.  And she alleges that JRD and Mitsubishi's design and testing "was committed with wanton and willful disregard for the rights and safety of consumers, including Plaintiff." *Id.* ¶ 96.  But she does not provide any *factual* support for those conclusory allegations.  Thus, her claim is not plausible. *See Henderson*, 2011 WL 4024656, at *8; *Moore*, 840 F. Supp. 2d at 1353.

> **B.    In Addition To Being Insufficiently Pled, Plaintiff's Design Defect-Based Claims (Counts 1, 2 and 4) Are Preempted By Federal Law.**

When the Court dismissed Plaintiff's initial Complaint, it held that Plaintiff's design claims were not preempted because, under Georgia law, Plaintiff could pursue her claims on a failure-to-warn theory.  *See* Doc. 20 at 67; *see also id.* at 75–76.  This Motion does *not* challenge that aspect of the Court's ruling—*i.e.*, Defendants do *not* seek the dismissal of Plaintiff's design claims to the extent they

are premised on an alleged failure to warn.  Instead, consistent with the Court's ruling, Defendants seek dismissal of Plaintiff's design claims against JRD only to the extent they are based on a failure to change Invokana's chemical design.

It is apparent from the Amended Complaint that Plaintiff is seeking to advance design claims that are premised not just on a failure to warn, but *also* on a failure to change the chemical design of Invokana.  *Compare* Am. Compl. ¶ 37 (alleging that Defendants are liable because Invokana "was defective in design or formulation in that . . . the foreseeable risks exceeded the benefits associated with its design or formulation"), *and* ¶¶ 51–52 (alleging that Invokana "is defectively designed because it is capable of causing serious medical conditions, such as kidney failure and ketoacidosis" and is "more dangerous than other drugs"), *with id.* ¶ 54 (alleging alternatively that the "design is *also* defective in that it . . . fails to adequately warn that it causes ketoacidosis" (emphasis added)).   Indeed, the Amended Complaint is littered with allegations demonstrating that Plaintiff intends to pursue claims premised on JRD and Mitsubishi's alleged underlying failure to have produced a drug with a safer risk-benefit profile.[8]

---

[8] *See* Am. Compl. ¶ 44 (alleging that Invokana was "defectively designed" by JRD and Mitsubishi because they "failed to adequately research, design, and test" the drug); ¶ 52 (alleging Invokana was defectively designed by JRD and Mitsubishi because the drug is "more dangerous than other drugs which are designed to treat

While the Court held that Plaintiff may pursue design claims premised on an alleged failure to warn, it did *not* give Plaintiff permission to pursue claims premised on a failure to change Invokana's chemical formulation.  As the Court correctly recognized, the Supreme Court determined in *Mutual Pharmaceutical Co. v. Bartlett*, 133 S. Ct. 2466 (2013), that claims of the latter variety cannot stand.  *See* Doc. 20 at 67 ("Once a drug—whether generic or brand-name—is approved, the manufacturer is prohibited from making any major changes to the 'qualitative or quantitative formulation of the drug product, including active ingredients, or in the specifications provided in the approved application.'" (quoting *Bartlett*, 133 S. Ct. at 2471)); *see also Bartlett*, 133 S. Ct. at 2479 (holding that "state-law design-defect claims . . . that place a duty on manufacturers to render a drug safer by . . . altering its composition . . . are in conflict with federal laws that prohibit manufacturers from unilaterally altering drug composition").[2]

---

type 2 diabetes"); ¶ 77 (alleging that Invokana "was defective because . . . it prohibits glucose absorption in the kidneys and causes overproduction of acids (i.e., ketones) in some patients' blood, leading to ketoacidosis and kidney failure"); ¶ 78 (alleging that JRD and Mitsubishi "were negligent in . . . researching, designing, and testing Invokana® by, inter alia, failure to use due care in developing and testing Invokana® to avoid the aforementioned risks").

[2] Because "a drug's usefulness and its risk of danger are both direct results of its chemical design," any change to Invokana's chemical design as advocated by

Moreover, the reasoning in *Bartlett* is *not* limited to generic drugs.  Instead, it applies equally to branded drugs like Invokana.  As the Northern District of Ohio recognized in *Yates v. Ortho-McNeil Pharm., Inc.*, 76 F. Supp. 3d 680 (N.D. Ohio 2015), the language from *Bartlett* that this Court quoted at page 67 of its Order "establishes that the Supreme Court did not limit its holding in *Bartlett* to generic drugs."  *Id.* at 686.  Not surprisingly, the only two Courts of Appeal to have considered the issue have concluded that the preemption principles in *Bartlett* and *PLIVA, Inc. v. Mensing*, 131 S. Ct. 2567 (2011) apply to branded drugs.  *See Yates v. Ortho-McNeil-Janssen Pharms., Inc.*, 808 F.3d 281, 298–300 (6th Cir. 2015) (holding that design claims involving branded drug were preempted); *In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 779 F.3d 34, 43 (1st Cir. 2015) (holding that failure-to-warn claim involving branded drug was preempted).

In fact, after this Court dismissed Plaintiff's initial Complaint, the Third Circuit confirmed that the principles in *Bartlett* and *Mensing* are not limited to *any* pharmaceutical context.  *See Sikkelee v. Precision Airmotive Corp.*, --- F.3d ---, 2016 WL 1567236, at *18–*19 (3d Cir. Apr. 19, 2016) (citing *Bartlett* and

---

Plaintiff would result in "a new drug that would require its own NDA to be marketed in interstate commerce."  *Bartlett*, 133 S. Ct. at 2475 (quoting 21 C.F.R. § 310.3(h) (giving examples of when FDA considers a drug to be new, including cases involving "newness for drug use of any substance which composes such drug, in whole or in part")).

*Mensing* for proposition that "where manufacturers are unable to simultaneously comply with both federal and state requirements, state law design defect claims are conflict preempted[,]" and confirming that "[t]he same considerations apply" to design defect claims implicating Federal Aviation Administration regulations).[10]

Consistent with the reasoning in *Yates*, *In re Celexa*, and *Sikkelee*, multiple courts have applied *Bartlett* to find state law design defect claims involving *branded* drugs like Invokana are preempted.[11]  The Northern District of Alabama and the District of Connecticut recently decided two additional such cases that this Court did not have an opportunity to consider when it dismissed Plaintiff's initial Complaint.  *See Barcal v. EMD Serono, Inc.*, 2016 WL 1086028, at *2, *4 & nn.2, 4  (N.D. Ala. Mar. 21, 2016) (dismissing design defect, implied warranty, and negligence claims because they "would essentially require EMD Serono to

---

[10] *See also Wos v. E.M.A. ex rel. Johnson*, 133 S. Ct. 1391, 1398 (2013) (applying *Mensing* preemption to state law purporting to impose lien on Medicaid beneficiaries' tort recoveries); *Horseman's Benevolent & Protective Ass'n-Ohio Div., Inc. v. DeWine*, 666 F.3d 997, 1000–01 (6th Cir. 2012) (holding state law conflicted with federal statute requiring consent of a horseman's group to off-track wagering).

[11] *See* Doc. 10–1 (discussing *Rheinfrank v. Abbott Labs., Inc.*, --- F. Supp. 3d ---, 2015 WL 5836973 (S.D. Ohio Oct. 2, 2015); *Shah v. Forest Labs., Inc.*, 2015 WL 3396813 (N.D. Ill. May 26, 2015); *Booker v. Johnson & Johnson*, 54 F. Supp. 3d 868 (N.D. Ohio 2014); *Amos v. Biogen Idec Inc.*, 28 F. Supp. 3d 164 (W.D.N.Y. 2014); *Thompson v. Allergan USA, Inc.*, 993 F. Supp. 2d 1007 (E.D. Mo. 2014)).

redesign Serophene" without FDA approval and explaining that "[t]his is precisely the kind of impossibility in which the Supreme Court has found preemption"); *Batoh v. McNeil-PPC, Inc.*, 2016 WL 922779, at *1 (D. Conn. Mar. 10, 2016) ("[B]ecause federal regulations barred the defendants from changing the active ingredient in Motrin without prior [FDA] approval . . ., federal law prevented the defendants from complying with the state law duties this lawsuit would impose on them to alter the chemical composition of Motrin.").

Significantly, the plaintiffs in *Barcal* and *Batoh* pursued claims that—like Plaintiff's claims here—were premised *both* on a failure to change a branded drug's chemical design *and* a failure to warn about the drug's purported risks.  The courts reasoned that while the plaintiffs' claims could proceed on a failure-to-warn theory, the claims nevertheless were preempted to the extent based on an underlying failure to change the drugs' chemical design.  *See Barcal*, 2016 WL 1086028, at *2, *4 & nn.2–4 (dismissing negligence claim as preempted to extent based on failure to change branded drug's design even though claim allowed to proceed on failure-to-warn theory); *Batoh*, 2016 WL 922779, at *16–*17 (finding that even though design defect claim was not preempted to extent based on purported failure to warn, it *was* preempted to extent based on failure to "alter[] the chemical composition of Motrin").

The Court should follow *Barcal* and *Batoh* and the other authorities discussed above and should dismiss Plaintiff's design defect-based claims to the extent they are premised on a failure to change Invokana's chemical design.  While the Court has ruled that Plaintiff may pursue design claims premised on an alleged failure to warn, there is *no* basis for allowing her to proceed with alternative claims that are plainly preempted by federal law.

## C. All of Plaintiff's Claims Against Ortho Are Preempted.

Federal law requires FDA approval of a New Drug Application ("NDA") prior to marketing a new drug in the United States.  The company that owns and controls the NDA is referred to as the applicant.  *See* 21 C.F.R. § 314.3(b) (defining "application" and "applicant"); *see also id.* § 314.50 (describing NDA contents).  Following the FDA's approval of a new drug, proposed changes to the drug's design, manufacture, or labeling must be submitted to the FDA in the form of a "supplement" to the NDA.  *See id.* § 314.70(a)(1)(i).[12]

Critical to the preemption analysis here is *who* can submit a supplement to an approved drug application.  Federal law provides a clear answer:  "[o]nly the

---

[12] *See also* FDA Guidance for Industry: Changes to an Approved NDA or ANDA (April 2004) (describing processes to change approved drug's manufacturing site, manufacturing processes, product specifications, container closure system, and labeling), *available at* http://www.fda.gov/downloads/drugs/guidancecompliance regulatoryinformation/guidances/ucm077097.pdf (last visited May 15, 2016).

applicant" may do so.  21 C.F.R. § 314.71(a); *see also id.* § 314.70(a)(1)(i) ("[T]he applicant must notify FDA about the change in a supplement.").  In the case of Invokana, Janssen is the NDA applicant.[13]  Accordingly, federal law prohibits Ortho from changing Invokana's design, manufacture, or labeling.

Addressing an analogous situation, the Sixth Circuit found failure-to-warn claims against a non-NDA holder preempted.  *See In re Darvocet, Darvon, & Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917, 940 (6th Cir. 2014).  In *Darvocet*, Eli Lilly & Co. previously had held the NDA for a brand-name drug, sold the NDA to another company, and then continued manufacturing the drug for a generic company.  The Sixth Circuit held that failure-to-warn claims against Lilly involving use of the drug after Lilly sold its NDA were preempted, reasoning that "[a]fter the divestiture [of the NDA], Lilly had no more power to change the label than did" generic manufacturers.  *Id.*

Other courts agree that a defendant's status as a non-NDA-holder is

---

[13] The FDA's on-line database shows that Janssen holds the NDA for Invokana. *See* http://www.accessdata.fda.gov/scripts/cder/drugsatfda/index.cfm?fuseaction =Search.Overview&DrugName=INVOKANA (last visited May 15, 2016).  Ortho requests that the Court take judicial notice of this database.  *See Funk v. Stryker Corp.*, 631 F.3d 777, 783 (5th Cir. 2011) (affirming judicial notice of FDA documents and transcripts granting premarket approval for medical device); *Guidry*, 2016 WL 633673, at *4 n.9 (taking judicial notice of Prescribing Information for Invokana).

determinative.   For example, the court in *In re Fosamax (Alendronate Sodium)* *Prods. Liab. Litig. (No. II)*, 2012 WL 181411 (D.N.J. Jan. 17, 2012), held that claims against a distributor were preempted because the distributor could not change the labeling under federal law.  As the court explained, "[t]hat power lies with the applicant who filed the New Drug Application (NDA) seeking approval to market Fosamax."  *Id.* at *3–*4.[14]

Although  Ortho  manufactures  Invokana  for  Janssen  (*see supra* n.5 (Prescribing Information at p. 35)), Ortho could not independently alter the drug's labeling.   Thus, Plaintiff's claims against Ortho—which are premised on a purported failure to properly label the drug—are preempted.  *See Mensing*, 131 S. Ct. at 2579 ("The question for 'impossibility' is whether the private party could independently do under federal law what state law requires of it.").

## III.  **CONCLUSION.**

For the foregoing reasons, the Court should grant Defendants' Motion.

---

[14] *See also Stevens v. Cmty. Health Care, Inc.*, 2011 WL 6379298, at *1 (Mass. Super. Ct. Oct. 5, 2011) ("As a distributor, . . . DAVA had no ability to change labeling or warnings and thus . . . cannot be subject to liability in connection with a state law claim premised on a 'failure to warn.'").

Respectfully submitted this 16th day of May, 2016.

*s/ Christiana C. Jacxsens*
Christiana C. Jacxsens
Georgia Bar No. 233912
GREENBERG TRAURIG, LLP
Terminus 200
3333 Piedmont Road, N.E.
Suite 2500
Atlanta, GA 30305
Telephone:  (678) 553-2105
Facsimile:   (678) 553-2106
jacxsensc@gtlaw.com

*Attorneys for Defendants Janssen*
*Pharmaceuticals, Inc., Janssen*
*Research & Development, LLC, and*
*Janssen Ortho LLC*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

_____

PAULA BRAZIL,

      Plaintiff,

v.

JANSSEN RESEARCH &
DEVELOPMENT LLC, et al.

      Defendants.
_____

)
)
)
)
)
)
)
)
)
)
)

CIVIL ACTION
FILE NO: 4:15-CV-00204-HLM

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 16, 2016, I electronically filed the **Defendants'**
**Memorandum in Support of Motion to Dismiss Amended Complaint** with the
Clerk of Court using the CM/ECF system, which will automatically send email
notification of such filing to the following counsel of record:

Mark E. Silvey
Adam A. Edwards
Greg Coleman Law PC
First Tennessee Plaza
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
adam@gregcolemanlaw.com
mark@gregcolemanlaw.com
*Counsel for Plaintiff*

1

This 16th day of May, 2016.

*s/ Christiana C. Jacxsens*
Christiana C. Jacxsens
Georgia Bar No. 233912

*Attorneys for Defendants Janssen*
*Pharmaceuticals, Inc., Janssen Research &*
*Development, LLC, and Janssen Ortho LLC*

**GREENBERG TRAURIG LLP**
Terminus 200
3333 Piedmont Rd., NE, Suite 2500
Atlanta, Georgia 30305
Telephone:  (678) 553-2105
Facsimile:   (678) 553-2106
jacxsensc@gtlaw.com